(No. 11155.—Decree affirmed.)

MARY A. J. BLACKSTONE *et al.* Appellees, *vs.* ELLEN HART-
MAN ALTHOUSE, Appellant.

*Opinion filed April 19, 1917—Rehearing denied June 7, 1917.*

1. WILLS—*executory interest to arise in future needs no par-
ticular estate to support it—base fees.* Where a testatrix, after de-
vising a fee to a certain devisee, qualifies it by providing that in
case of his death without issue the estate shall be sold and the pro-
ceeds distributed to the brothers and sisters of the testatrix and
two named persons, the devisee takes a base or determinable fee,
and the executory interest to arise in the future is valid and needs
no particular estate to support it.

2. SAME—*executory devise is indestructible except by a failure
of the contingency upon which it is to take effect.* An executory
devise can only be destroyed by a failure of the contingency upon
which it is to take effect, and at common law it could not be pre-
vented from taking effect when the contingency happened, either
by fine and recovery or in any way by which contingent remain-
ders could be destroyed, and where the first taker is given a base
fee the determinable quality of the fee follows any transfer by him,
including a sale of the land for taxes, and the executory devise is
not affected.

3. SAME—*a limitation over of chattels by way of executory de-
vise is good.* Where a testatrix gives certain land to a named per-
son and provides that at his death without issue the land shall be
sold and the proceeds divided among certain persons, the execu-
tory devise, although a limitation over of chattels, is good.

4. SAME—*an executory devise is an interest in the estate al-
though it is never vested before the coming into possession.* An
executory devise, before coming into possession, is never vested,
but it is above the grade of a mere possibility and is regarded as
a certain interest in the estate.

5. SAME—*when an executory devise is transmissible and when
not.* If the persons to whom an estate is to pass by executory de-
vise are not ascertainable until the contingency happens the execu-
tory interest is not transmissible, because it cannot be known until
then in whom the interest will vest, but if the identity of the ex-
ecutory devisee is certain and the object of the devise is fixed the
future interest is assignable and transmissible.

6. SAME—*effect where an executory devise is to a class.* If an
executory devise is to a class, those members of the class who are
in being when the gift takes effect will take all to the exclusion of

278 — 31

.pre-deceased members of the class, with the statutory exception in favor of a child or grandchild who shall die before the testator and where no provision is made for the contingency.

7. · SAME—*when devisees constitute a class.* A class, in its ordinary acceptation, is a number or body of persons with common characteristics or in like circumstances or having some common attribute, and, as applied to a devise, it is generally understood to mean a number of persons who stand in the same relation to each other or to the testator and who are uncertain in number at the time of the gift; but the language of a will must disclose an intention to create a class or the beneficiaries will take distributively.

8. SAME—*when an executory devise is not a gift to a class.* An executory devise is not a gift to a class where at the time of making it the number of devisees is certain and the share each is to receive is also certain and in no way dependent for its amount on the members surviving when the contingency happens.

9. SAME—*devise to brothers and sisters and two named persons is not to a class.* Where a testatrix devises certain land to a named devisee, and provides that in case of his death without issue the land shall be sold and the proceeds divided among the brothers and sisters of the testatrix, who were old people and definitely ascer-·tained, and to two other named devisees, the executory devise is not a gift to a class and the executory interest thereunder is transmissible and descendible.

APPEAL from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

H. K. & H. H. WHEELER, (JOHN M. CAMERON, of counsel,) for appellant.

GRANGER, DOUGHERTY & NOURIE, BEASLEY, DOUTHITT, CRAWFORD & BEASLEY, JOHN M. CLEARY, LEO V. CLEARY, C. ARCH WILLIAMS, and F. S. LOOMIS, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court :

Jane Blackstone died on April 30, 1865, leaving a last will and testament executed on March 13, 1865, which was admitted to probate in the county court of Kankakee county.

She had taken and brought up from infancy two boys, John Smith and Lawrence McGill, (to whom she added the name Blackstone,) and a girl, Ellen Hartman, now Ellen Hartman Althouse, appellant. The testatrix had three brothers, William Glover, James Glover and Samuel Glover, and two sisters, Elizabeth Ray and Ann Glover. After providing for the payment of her debts and funeral expenses she devised to John Smith Blackstone 240 acres of land and two timber lots. The third clause, under which this controversy arose, is as follows:

*"Third*—I give, devise and bequeath unto Lawrence McGill, known by the name of Lawrence Blackstone, (being brought up by me from infancy,) all these certain tracts or parcels of land situated in the county of Kankakee and State of Illinois and described as follows, viz.: The northeast quarter of section No. 18, in township No. 31, north of range No. 12, east of the third principal meridian; also the east half of the southwest quarter of section No. 7, in township No. 31, north of range No. 12, east of the third principal meridian; also lot No. 17 of subdivision of lot No. 14 of the west half of the Me-she-ke-ten-o reservation; and also lot No. 6 of the subdivision of lot No. 13 of the west half of the Me-she-ke-ten-o reservation, being in township No. 31, north of range No. 11, east of the third principal meridian, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining; to have and to hold the premises above described to the said Lawrence Blackstone, his heirs and assigns forever: *Provided,* that should the said Lawrence Blackstone die without issue, then in that case all the lands bequeathed to him shall be sold by my executor hereinafter appointed and the proceeds thereof be divided equally among my brothers and sisters and John Smith Blackstone and Ellen Hartman."

John Smith Blackstone was executor of the will, and legacies were given to John Cooper, Ellen Hartman and

Samuel Glover, to be raised out of a sale of a 55-acre tract of land, and the balance of the proceeds of the tract was given in equal parts to the brothers and sisters of the testatrix. There were other bequests not material in this case. John Smith Blackstone, the executor, died in June, 1910. Lawrence McGill Blackstone died August 6, 1915, without issue, having never been married, leaving a will, by which he gave his property to legatees and devisees who would have been his heirs-at-law if he had died intestate, and all of the brothers and sisters of the testatrix died before the death of Lawrence McGill Blackstone, so that the appellant, Ellen Hartman Althouse, was the only one of the beneficiaries named in the third clause of the will who was living when the executory devise took effect. In 1869 the devisee, Lawrence McGill Blackstone, executed a deed of the lands described in the third clause of the will to Simon P. Steward, and in 1874 Steward re-conveyed the lands. Lawrence McGill Blackstone allowed four acres of the land to be sold for taxes, and a sheriff's deed was made to John Forsythe, who afterward, on November 18, 1874, conveyed the tract to Lawrence McGill Blackstone.

The appellee Mary A. J. Blackstone commenced this suit in the circuit court of Kankakee county by filing her bill against the appellant, Ellen Hartman Althouse, the heirs and devisees of the brothers and sisters of the testatrix, Jane Blackstone, and the heirs and devisees of Lawrence McGill Blackstone, praying for a construction of the third clause of the will and the appointment of a trustee to sell the lands and divide the proceeds. She set up as the true construction of the will that she was entitled to one-seventh, Ellen Hartman Althouse one-seventh, and the heirs, representatives and devisees of the five brothers and sisters of the testatrix the remaining five-sevenths, which was to be distributed among them. The appellant, Ellen Hartman Althouse, by her answer denied that the complainant or any other person had any interest in the real estate

or the proceeds thereof, but she claimed the whole as the sole surviving member of the class mentioned in the third clause to whom the executory interest was limited, and alleged that there was no necessity for the appointment of a trustee. She also filed a cross-bill, alleging the death of all the brothers and sisters of Jane Blackstone prior to the death of Lawrence McGill Blackstone, and the rearing of herself by Jane Blackstone as a member of her family, and claiming ownership of the land as in her answer. The heirs and devisees of Lawrence McGill Blackstone answered the original bill and cross-bill, claiming to own the land by virtue of the tax deed and the deed by Simon P. Steward to Lawrence McGill Blackstone, and they filed a cross-bill making the same claim. Answers to all the bills and cross-bills and replications thereto having been filed, there was a hearing, upon which the chancellor found as prayed in the original bill, and entered a decree ordering the tax deed and Steward deed removed as clouds upon the title, dismissing the cross-bills of Ellen Hartman Althouse and of the heirs and devisees of Lawrence McGill Blackstone and granting the relief prayed for in the original bill. From the decree Ellen Hartman Althouse prosecuted this appeal.

Jane Blackstone devised a fee in the lands to Lawrence McGill Blackstone but qualified the fee so devised by a provision that on the contingency of his death without issue the estate should go over to the executory devisees, to be converted into money and the proceeds divided among them. Such an executory interest may be created to arise in the future and it needs no particular estate to support it. The estate created in Lawrence McGill Blackstone was a base or determinable fee, which came to an end when the executory devise took effect. (*Fifer* v. *Allen,* 228 Ill. 507; *Ahlfield* v. *Curtis,* 229 id. 139; *Brenock* v. *Brenock,* 230 id. 519; *Mayer* v. *McCracken,* 245 id. 551.) An executory devise can only be destroyed by a failure of the contingency upon which it is to take effect, and it could

not, at the common law, be prevented from taking effect when the contingency happened, either by fine and recovery or in any of the modes by which contingent remainders could be destroyed. The executory devise being indestructible, the determinable quality of the fee of the first taker follows any transfer by him. (*Becker* v. *Becker,* 206 Ill. 53; *Williams* v. *Elliott,* 246 id. 548.) It makes no difference that the real estate in this case is to be sold by the executor and the proceeds distributed, since a limitation over of chattels is good as an executory devise, and the only difference is, if the executory devise takes effect as to chattels it goes to personal representatives. (*Glover* v. *Condell,* 163 Ill. 566; 11 R. C. L. 473.) Therefore the conveyance of Lawrence McGill Blackstone to Simon P. Steward, and the reconveyance, did not affect the executory interest, and the tax deed had no effect because it was the duty of Lawrence McGill Blackstone to pay the taxes and he could take no benefit from the failure to do so.

The controversy between the appellant, Ellen Hartman Althouse, and the parties claiming as heirs and devisees of the brothers and sisters and John Smith Blackstone is whether appellant took the entire estate upon the death of Lawrence McGill Blackstone, as the sole surviving person to whom the executory interest was limited. An executory devise before coming into possession is never vested, but it is above the grade of a mere possibility and is regarded as a certain interest in the estate. If the persons to whom the estate is to pass are not ascertainable until the contingency happens the executory interest is not transmissible, because it cannot be known until the happening of the contingency in whom the interest will vest, but those entitled are then to be determined. If, however, the identity of the executory devisee is certain and the object of the devise is fixed, so that upon the happening of the contingency the executory devisee will take the estate, the future interest is assignable and transmissible. That rule of law was

declared in 1823 in the case of *Ackless* v. *Seekright,* Breese, 76, and it has never been departed from. In that case the testator gave all his property, real and personal, to his daughter, but provided that if she died before she came of age the estate was to go to his friend, George Lunceford. The testator died in 1806 and Lunceford died in 1808, during the lifetime of the daughter, who died in 1815 or 1816, under the age of twenty-one years. The court said that at common law contingent remainders and executory devises were transmissible and would descend to the heirs of the persons to whom they were limited although they should die before the contingency happened, and held that George Lunceford had such an interest as descended to his heirs-at-law. The law as to a contingent remainder was recognized in *Drury* v. *Drury,* 271 Ill. 336, where it was said that such a remainder is descendible where the contingency is not as to the persons who will take the ultimate remainder in case it should ever vest, and the rule that executory interests may be assigned or devised and are transmissible to the representatives of the devisee if he dies before the contingency happens is ancient and settled. (4 Kent's Com. 285.)

One exception to the rule of law that executory interests are transmissible and descend to heirs is, as above stated, where the interest is contingent on account of the person in whom it will vest on the happening of the contingency. In that case the executory interest is not transmissible, because if there is no person answering the given description no interest has attached to anyone. Under that exception counsel for appellant contend that the executory devise to the brothers and sisters of the testatrix and John Smith Blackstone and Ellen Hartman was a gift to a class, the members of which were to be ascertained when the devise should take effect in possession. If a gift is to a class, those members of the class who are in being when the gift takes effect will take all to the exclusion of pre-

deceased members of the class, with the statutory exception
in favor of a child or grandchild who shall die before the
testator and where no provision is made for the contingency.
(*Brewick* v. *Anderson*, 267 Ill. 169; *Drury* v. *Drury*, *su-
pra.*)  A class, in its ordinary acceptation, is a number
or body of persons with common characteristics or in like
circumstances or having some common attribute, and, as
applied to a devise, it is generally understood to mean a
number of persons who stand in the same relation to each
other or to the testator.  A definition of such a devise gen-
erally approved is as follows:  "A gift to a class has been
defined as a gift of an aggregate sum to a body of persons
uncertain in number at the time of the gift, to be ascer-
tained at a future time, and who are all to take in equal
or in some other proportion, the share of each being de-
pendent for its amount upon the ultimate number of per-
sons."  (1 Jarman on Wills,—6th ed.—232.)  That defini-
tion was quoted in *Volunteers of America* v. *Peirce*, 267
Ill. 406, where the question was whether a devise to a trus-
tee, with directions to divide the residuary estate equally
among six named institutions, was a gift to a class, and
where it was held that it was not such a gift, and that the
language of a will must disclose an intention to create a
class or the beneficiaries will take distributively.  It will
be observed, under the definition, that a gift to a class is
a gift to a body of persons uncertain in number at the time
of the gift, to be ascertained at a future time, and that was
regarded as a test in *Auger* v. *Tatham*, 191 Ill. 296.  In
that case the court considered whether the heirs-at-law of
Lucy Auger, deceased, constituted a class and decided that
they did not, giving as one reason that at the time the
will was made Lucy Auger was dead, and reference to her
heirs-at-law was a reference to persons then definitely as-
certained,—as much so as if they had been specifically
named.  In this case Jane Blackstone was sixty-four years
old when she made her will.  A brother born in 1795 had

died in 1829 and a sister had died in 1818. The surviving brothers and sisters were old people and were as definitely ascertained as if they had been specifically named. Furthermore, she did name them in the sixth clause of the will, where she described them as "my brothers and sisters, as follows: William Glover, James Glover, Samuel Glover, Elizabeth Ray and Ann Glover."

A devise is not a gift to a class where at the time of making it the number of devisees is certain and the share each is to receive is also certain and in no way dependent for its amount on the members surviving when the contingency happens. (*In re Smith,* 9 Ch. Div. 117; *In re Kimberly,* 150 N. Y. 90; *Matter of King,* 200 id. 189; 21 Ann. Cas. 412.) The devise to a class must be to a number of persons answering some general description or having some common characteristics or relation to the testator, but in the construction of wills the prime object of the courts is to ascertain the intention of the testator, and it is, perhaps, not essential that there should be only such description and that names should not be given· if it is apparent from the context that the testator intended to give the property to the persons named as a class. *Prima facie,* a gift to a class is one consisting of persons who are included and comprehended under some general description and bear some relation to the testator or have some common relation to each other, and there is nothing in the context of this will which would justify the application of a different doctrine. The brothers and sisters of the testatrix bore a definite relation to her or to each other, but John Smith Blackstone and Ellen Hartman, who were specifically named, were not within such relation and would not have been her heirs-at-law.

The brothers and sisters were definitely ascertained when the will was made and were not to be ascertained at some future time, and they, with John Smith Blackstone and Ellen Hartman, did not come within any definition of a class of persons. The devise was therefore not a gift

to a class and the executory interest was transmissible and descendible.

The decree is affirmed.          .          *Decree affirmed.*