(Nos. 12945-13019.—Reversed and remanded.)

LAURA A. DuBois *et al.* Appellees, *vs.* CHARLES C. JUDY, Appellant.—LAURA A. DuBois *et al.* Appellees, *vs.* CHARLES C. JUDY *et al.*—(ALLIE REDMOND *et al.* Appellants.)

*Opinion filed February 18, 1920.*

1. DEEDS—*rule in Shelley's case is applied as a rule of law and not of construction.* The rule in *Shelley's case* is a rule of law and not of construction, and where a grantor uses technical language which brings the case within the rule, a declaration, however positive, that the rule shall not apply, or that the estate of the ancestor shall not continue beyond the primary express limitation, or that the heirs shall take by purchase and not by descent, is unavailing to defeat the application of the rule.

2. SAME—*when rule in Shelley's case applies.* Where a grantor conveys land by warranty deed to "the heirs-at-law" of a particular person named, "reserving" and conveying to said named person a life estate, "the said grantees first above named to have and receive said lands at the death of" the intended life tenant, the words "heirs-at-law" are words of limitation of the estate and not words of purchase, and the life tenant takes the fee under the rule in *Shelley's case.*

3. SAME—*what is a reservation in a deed.* A reservation in a deed is some right in favor of the grantor created out of or retained in the granted premises, and a purported reservation in favor of a third person can only take effect as a grant to him by way of exception to the other grant, and in such case there must be words of conveyance to the third person, except that a grantor may reserve to himself and his wife an estate during their natural lives, which will continue during the life of the survivor.

4. SAME—*conveyance of present estate to heirs of living person is void.* A conveyance of a present estate to the heirs of a living person is void for uncertainty because those who will take as heirs cannot be known until the person's death, but future estates may be limited to persons who are not ascertained or even not in existence, provided there is a present particular estate to sustain the remainder and the grantee shall be in existence when the time arrives for the enjoyment of the estate.

5. SAME—*when word "heirs" is a word of limitation.* The word "heirs" is a word of limitation where it is not used to describe individuals but to designate heirs generally or the whole line of

heirs in succession, and it is not to be construed as a word of purchase unless there are other controlling words showing such intention by the person using it, and if it is used as a word of limitation its effect is to mark out the estate granted.

6. SAME—*to what extent intention of grantor may be considered in determining the application of rule in Shelley's case.* The desire of the grantor or testator to have the rule in *Shelley's case* disregarded in the construction of the instrument cannot be considered in determining the application of the rule, but it is proper to consider whether the grantor or testator used the words of inheritance with a meaning different from their technical sense.

7. SAME—*when quit-claim deeds by contingent remainder-men do not convey their interests.* Where a will creates a contingent remainder in the "heirs-at-law" of the life tenant, quit-claim deeds by the children of the life tenant to the purchaser of the life tenant's interest do not convey the contingent interests, where the deeds are executed during the life of the life tenant and contain no provisions for conveying after-acquired titles.

8. SAME—*when a contingent remainder may be transferred.* As a contingent remainder is not an estate but merely the possibility of having one it cannot be subject to legal process or voluntary sale by deed, but where the person is ascertained and the event, only, is uncertain the contingent remainder may be released to the reversioner and is subject to devise and descent, and a warranty deed will operate to transfer the title by way of estoppel.

9. SAME—*interest conveyed by a deed must be in existence at time of delivery.* It is essential to a deed not only that there shall be proper parties but that there shall be a thing granted, and a deed is void if the grantor has no existing interest to convey at the time it is delivered.

10. WILLS—*when will creates a contingent remainder in fee to heirs of life tenant.* A will which devises property to the testator's son, "to have and to hold for and during the term of his natural life and at his death then to the heirs of his body in fee simple," creates a contingent remainder until it is determined, by the death of the life tenant, who will be his heirs.

APPEALS from the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

EDWARD H. GOLDEN, and ARTHUR W. LILIENSTEIN, (JOHN M. SMOOT, of counsel,) for appellant Charles C. Judy.

Thomas P. Reep, for appellants Allie Redmond and Minnie Firestock and appellees Thomas DeWitte Greene, Ruth Thurman, Harriet, Louis, Stephen and Ralph Johnson.

Frank E. Blane, for appellees Laura A. DuBois, Georgia Wilson, Myrtle Bownell and Norine Greene.

Mr. Chief Justice Dunn delivered the opinion of the court:

Two appeals have been prosecuted from a decree of the circuit court of Menard county for the partition of two tracts of land, one of 70 acres and the other of 85 acres. The land belonged at one time to Johnson Gaines Greene, who on March 26, 1881, conveyed the 70-acre tract by warranty deed in statutory form to "the heirs-at-law of Woodson P. Greene, * * * reserving herein, however, and hereby conveying to Woodson P. Greene a life estate in the above described real estate, the said grantees first above named to have and receive said lands at the death of Woodson P. Greene." On September 2, 1889, by virtue of a master's deed under a decree of foreclosure of a mortgage, Charles C. Judy became the owner of the interest of Woodson P. Greene in the tract. Johnson Gaines Greene died in 1885, leaving a will, which devised the 85-acre tract as follows: "I give and devise to my son, Woodson P. Greene, [description of the tract,] to have and to hold for and during the term of his natural life and at his death then to the heirs of his body in fee simple." The will also contained the following provision with respect to this and certain other devises: "In event either of said four sons and daughters should die leaving no heir or heirs of his or her body to take the fee in the portion above devised to them, in such case that particular portion of land shall be taken by my heirs in fee simple, just as though I had died intestate, at date of death of such son or daughter." By virtue of an execution sale and sheriff's deed and *mesne* conveyances

Judy in 1888 became the owner of the interest of Woodson P. Greene in this tract also. Woodson P. Greene died on October 8, 1918, having had eight children, seven of whom survived him and are parties to this suit. The eighth child, Charity Johnson, died December 25, 1911, leaving five children, who were also parties. Three of Woodson P. Greene's children,—Charity Johnson and her husband on February 8, 1897, Minnie Greene (now Firestock) on February 21, 1898, and Allie Redmond and her husband on March 10, 1900,—executed quit-claim deeds in statutory form, conveying and quit-claiming to Judy all interest in both tracts. The court decreed that Judy was the owner of one-fourth of both tracts by virtue of the quit-claim deeds of Minnie Firestock and Allie Redmond; that he took nothing by the deed of Charity Johnson, but the other five children of Woodson P. Greene each owned one-eighth and each of the five children of Charity Johnson one-fortieth of both tracts, and that partition should be made. Judy, Mrs. Firestock and Mrs. Redmond have appealed.

Judy claims to be the owner of all the 70-acre tract and of three-eighths of the 85-acre tract, while the other appellants claim that he has no interest in either tract but they are each entitled to one-eighth of both.

The rule in *Shelley's case* is firmly established in this State as a rule of property. We said in *Winter v. Dibble,* 251 Ill. 200: "The rule as stated by Coke (vol. 1, 104*a*,) is, that 'when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate and not words of purchase.' This is a rule of law and not of construction, and the use of the word 'heirs,' unless it clearly appears from the instrument to have been used in a sense different from its strict legal meaning, is conclusive of the intention. No declaration, however positive, that the ancestor shall be

tenant for life and no longer, and shall have no power to
sell or dispose of the premises or any part of them, or to
defeat the intention of the testator, will prevent the ap-
plication of the rule. (*Lord* v. *Comstock,* 240 Ill. 492;
*Deemer* v. *Kessinger,* 206 id. 57; *Hageman* v. *Hageman,*
129 id. 164; *Carpenter* v. *VanOlinder,* 127 id. 42.) If a
testator has used technical language which brings the case
within the rule, a declaration, however positive, that the rule
shall not apply, or that the estate of the ancestor shall not
continue beyond the primary express limitation, or that his
heirs shall take by purchase and not by descent, will be un-
availing to exclude the rule and cannot affect the result.—
*Daniel* v. *Whartenby,* 17 .Wall. 639; Hargrave's Law
Tracts, 562; 2 Jarman on Wills, 311." The deed of John-
son Gaines Greene to Woodson P. Greene comes exactly
within the rule as stated by Lord Coke. By it Woodson
P. Greene takes an estate of freehold,—that is, for life,—
and an estate is limited immediately to his heirs in fee. In
such case "the heirs" are words of limitation of the estate
and not words of purchase.

The appellees argue that there is no limitation by way
of remainder to heirs as the words are used in the rule;
that the carving of a life estate by way of reservation out
of a grant of a fee simple while leaving a remainder for
some purposes does not leave the character of remainder
coupled with the freehold in the ancestor contemplated by
the rule. The form of the conveyance is not material.
There is no reservation of a life estate. Strictly, a reser-
vation in a deed is some right in favor of the grantor
created out of or retained in the granted premises. A pur-
ported reservation in favor of a third person can only take
effect as a grant to him by way of exception to the other
grant, and in such case there must be words of conveyance
to the third person, except that a grantor may reserve to
himself and his wife an estate during their natural lives,
which will continue during the life of the survivor. (*White*

v. *Willard,* 232 Ill. 464.) The life estate to Woodson P.
Greene is created by construing the words "reserving here-
in, however, and hereby conveying to Woodson P. Greene
a life estate in the above described real estate," as a convey-
ance from Johnson Gaines Greene, and the conveyance to
the heirs of Woodson P. Greene would be void if the deed
did not contain the conveyance of the life estate to Woodson
P. Greene. A conveyance of a present estate to the heirs
of a living person is void for uncertainty, because those who
will take as heirs cannot be known until the person's death,
but future estates may be limited to persons who are not
ascertained or even not in existence, provided there is a
present particular estate to sustain the remainder and the
grantee shall be in existence when the time arrives for the
enjoyment of the estate. (*Ætna Life Ins. Co.* v. *Hoppin,*
249 Ill. 406.) It is only because of the conveyance of the
life estate that the conveyance to the heirs has any valid-
ity. Chancellor Kent's definition of a remainder is: "A
remnant of an estate in land depending upon a particular
prior estate created at the same time and by the same in-
strument and limited to arise immediately on the determina-
tion of that estate and not an abridgment of it." (4 Kent's
Com. 197.) If any estate was limited by the deed to the
heirs of Woodson P. Greene it was an estate in remain-
der in fee.

It is argued that the words "heirs-at-law" of Woodson
P. Greene are used to designate the individuals to whom the
fee is granted,—that is, those persons who shall be Wood-
son P. Greene's heirs-at-law at his death; that they are to
take directly from the grantor and not by descent from
Woodson P. Greene, and that they take a distinct estate
from that granted to Woodson P. Greene. There is noth-
ing in the deed to indicate that the grantor used the words
"heirs-at-law" in any other than their technical sense. The
word "heirs" is a word of limitation where it is not used
to describe individuals but to designate heirs generally or

the whole line of heirs in succession. It is not to be construed as a word of purchase unless there are other controlling words showing such intention by the person using it, and if it is used as a word of limitation its effect is to mark out the estate granted. (*Ortmayer* v. *Elcock,* 225 Ill. 342.) The question of intention does not depend upon the desire of the grantor or testator to have the rule disregarded in the construction of the instrument, but does depend upon the use of the words with a meaning different from their technical sense. A grantor or testator may use the word "heirs" in the sense of children, or the language of the instrument may indicate that the words of inheritance were not used, according to their legal import, to include the whole line of heritable blood of the ancestor as the stock of descent, but have been used in a restricted and untechnical sense to designate individuals to whom a distinct estate is given, and from whom, as its origin, the descent is thereafter to be derived. No such untechnical meaning is suggested here. The words are not restricted to any class of heirs or to any particular time, and there are no words in the context to indicate that they were intended to apply to children or to any particular individuals or to limit the meaning in any way.

It is argued that the clause, "the said grantees first above named to have and receive said lands at the death of Woodson P. Greene," expressly designates the individuals who may be his heirs-at-law at the time of his death as purchasers of the fee. It does not affect the case if the deed states that the heirs of Woodson P. Greene at his death shall take as purchasers. The conveyance is to the heirs as heirs. It includes all heirs, collateral as well as direct. They all take as a class, without reference to individuals or condition, and the rule vests the whole estate in the ancestor in such case.

The court erred in failing to decree that the deed conveyed the 70-acre tract to Woodson P. Greene in fee simple.

The will of Johnson Gaines Greene devised the 85-acre tract to Woodson P. Greene for life with a contingent remainder to his heirs in fee. (*Ætna Life Ins. Co.* v. *Hoppin, supra; Benson* v. *Tanner,* 276 Ill. 594.) Since the remainders were contingent as to the persons to take until by the death of Woodson P. Greene it was determined who were his heirs, Charity Johnson, who died in his lifetime and never became his heir, took no interest under her father's will and could therefore convey none. Her children were heirs of her father and took one-eighth interest under his will in the 85 acres, as the circuit court decreed. (*Ebey* v. *Adams,* 135 Ill. 80.) The deeds of the appellants Allie Redmond and Minnie Firestock were also made in the lifetime of Woodson P. Greene, when they had no interest in the land under Johnson Gaines Greene's will and therefore could convey none. They, however, survived their father, became his heirs, and by the terms of Johnson Gaines Greene's will upon the death of Woodson P. Greene the contingent remainder in one-eighth of the 85 acres devised to each of them then became vested.

The appellant Judy insists that the quit-claim deed which each grantor had executed in her father's lifetime was effective to convey her contingent remainder by way of release to him as the life tenant in possession. Section 10 of chapter 30 of the Revised Statutes declares that quit-claim deeds in the form there given (as were the deeds in question here) shall be held a good and sufficient conveyance to release and quit-claim to the grantee, his heirs and assigns, in fee, all of the then existing legal or equitable rights of the grantor in the premises therein described, but shall not extend to after-acquired title unless words are added expressing such intention. Since we have uniformly held that a contingent remainder is not a right in land but merely a possibility of acquiring one, such a remainder will not be conveyed by virtue of section 10, which limits the effect of the conveyance to existing legal or equitable rights of the

grantor in the premises. We have frequently held that a contingent remainder is not an estate but is merely the chance of having one, and that it cannot be the subject of sale, cannot be levied upon by legal process and cannot be conveyed voluntarily by deed, though a warranty deed may transfer the title by way of estoppel after the happening of the contingency and it may be released to the reversioner. *Haward* v. *Peavey*, 128 Ill. 430; *Walton* v. *Follansbee*, 131 id. 147; *Ducker* v. *Burnham*, 146 id. 9; *Williams* v. *Esten*, 179 id. 267; *Ortmayer* v. *Elcock, supra; Golladay* v. *Knock*, 235 Ill. 412; *Ætna Life Ins. Co.* v. *Hoppin, supra; Hill* v. *Hill*, 264 Ill. 219; *Kenwood Trust and Savings Bank* v. *Palmer*, 285 id. 552.

The rule of the common law prevails in this State that before the contingency happens contingent remainders can not be conveyed except by way of estoppel, but where the person is ascertained who is to take the remainder after it becomes vested it will pass to his heirs upon his death, or it may be devised by him and it may be released by him to the reversioner. It is only in cases where the contingency upon which the remainder is to vest is not in respect to the person but the event, and where the person who is to take if the event happens is ascertained, that the remainder may be granted or devised, but if the contingency is in the person who is to take, as where the remainder is limited to the heirs of one who is alive, there is no one who can make an effectual grant or devise of the remainder. (2 Washburn on Real Prop.—6th ed.—527, sec. 1557.)

The quit-claim deeds purported to convey only the interest which the grantors had at the date of the deeds and there were no words of reference to any future interests. In *Glover* v. *Condell*, 163 Ill. 566, we held that while a quit-claim deed will convey any estate which the grantor has at its execution, it cannot affect by way of release a future contingent interest limited to the surviving members of a class upon the event of the death of one of them without

living issue, there being no terms used in the deed which can be construed as referring to future interests. *Thompson* v. *Becker,* 194 Ill. 119, is to the same effect, and quit-claim deeds interchanged by five devisees to effect a partition of the land devised were held ineffectual to convey or release the future contingent interest which later became vested, in accordance with the terms of the will, in each of the four survivors of one of the devisees and grantors who died leaving no children. In *Blackstone* v. *Althouse,* 278 Ill. 481, it was held that an executory devise is transmissible when the identity of the executory devisee who will take the estate upon the happening of the contingency is certain, but not if the persons to take the estate cannot be ascertained until the contingency happens. In *Drury* v. *Drury,* 271 Ill. 336, the rule was stated that a contingent remainder is descendible when the contingency is not as to the persons who will take the ultimate remainder if it shall vest. In the cases of *Williams* v. *Esten, supra,* and *Ortmayer* v. *Elcock, supra,* the grantors were the persons who were definitely ascertained to take the future contingent interests. In the first case the future interest was not a contingent remainder but an executory devise which is assignable and devisable when the person to take is certain. (*Blackstone* v. *Althouse, supra;* 4 Kent's Com. 261.) In the other case the deed purported to convey the whole estate and contained a covenant for further assurance. Without deciding whether the remainder was vested or contingent the court held the deed operative to vest the remainder in the grantee. By reason of the covenant the deed, if not otherwise effective, would be operative by way of estoppel.

It is essential to a deed not only that there should be proper parties,—that is, a grantor and a grantee,—but that there should be a thing granted. A deed takes effect from its delivery. If it is not a valid deed then, it never can become one. It acts upon an existing interest, and if the grantor has no existing interest the deed is void and of no

effect. At the time the deeds of Mrs. Redmond and Mrs. Firestock were made they had no interest in the lands described in their deeds and those deeds conveyed no interest to the grantee. Since they were void when made they did not become effective by the death of the life tenant and the vesting of the contingent remainders. Charles C. Judy took nothing under the deeds, and the court erred in decreeing that he had any interest in the 85-acre tract.

The decree will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the bill as to the 70-acre tract and to enter a decree of partition of the 85-acre tract in accordance with this opinion. Charles C. Judy will pay the costs in No. 13019 and one-third of the costs in No. 12945, and the other parties will pay the remaining two-thirds of the costs in No. 12945.

*Reversed and remanded, with directions.*