(No. 38054.—

Della S. Hofing *et al.*, Appellants, *vs.* Howard Willis *et al.*, Appellees.

*Opinion filed September 29, 1964.*

C. G. Colburn, of Virginia, and Hoffmann and Hoffmann, of Springfield (Carl Hoffee, of counsel,) for appellants.

Jefferson Lewis, of Petersburg, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

This case calls for the construction of two warranty deeds conveying interests in separate tracts of property. Since a freehold is involved and the case was first argued

and submitted for decision prior to January 1, 1964, we have retained jurisdiction.

At the outset it is necessary to consider a motion by defendants to dismiss the appeal on the ground that two of the plaintiffs neither joined in the appeal nor were served with a copy of the notice of appeal. The motion has been taken with the case. In their objection to the motion plaintiffs show that the two omitted parties conveyed their interests in the land to certain of the other appellants prior to the appeal, and so have no present interest in the land. The defendants insist that the omitted persons still could be adversely affected because the decree had awarded them a proportionate share of the rents that had accrued from one of the tracts, and if the decree was reversed and title vested in the present appellants they would lose this proportionate share of rents.

Rule 34 of this court says in part that "A copy of the notice of appeal shall be served upon each party whether appellee or co-party, who would be adversely affected by any reversal or modification * * *." (Ill. Rev. Stat. 1963, chap. 110, par. 101.34.) Appellants do not seek on this appeal to have title fixed in them alone, to the exclusion of the omitted parties, as asserted by appellees. It is undisputed that the omitted persons were among the plaintiffs below, and the appellants ask "that the Decree of the Circuit Court of Menard County, Illinois, may be reversed and that said Circuit Court be directed to enter a Decree fixing the fee simple title to said lands in the plaintiffs." It is evident that if appellants are successful in their contentions the remaining plaintiffs would not be adversely affected. It was not necessary, therefore, to serve them with copies of the notice of appeal. (*Chicago Cosmetic Co.* v. *City of Chicago,* 374 Ill. 384; see also *Weaver* v. *Hodge,* 406 Ill. 537; *Bryant* v. *Lakeside Galleries, Inc.* 402 Ill. 466; *Toman* v. *Tufts,* 323 Ill. App. 516.) Defendants' motion to dismiss the appeal is denied.

On February 24, 1904, Michael Wittlinger held fee-simple title to a 40-acre tract of land in Sangamon County and an adjoining 160-acre tract in Menard County. On that date he and his wife Anna executed warranty deeds to both tracts. One deed conveyed the 40-acre tract to their son "Geo. Wittlinger and Edna Wittlinger his wife," and the other deed conveyed the 160-acre tract to "George Wittlinger and Edna Wittlinger, his wife during their natural lives," reserving to Michael and Anna "the use of two rooms in the house in which they now live during the remainder of their lives." Each deed also contained the following provision: "It is expressly understood that at the death of the said George Wittlinger and Edna Wittlinger his wife the said lands herein described shall revert to the heirs of the body of the said George Wittlinger. In case there be no heirs then the said lands shall revert to the sisters of the said George Wittlinger and to their heirs and assigns forever."

When the deeds were executed, Michael and Anna Wittlinger had five living children—their son George and four daughters. No more children were born to them. Michael died intestate in 1905, and Anna in 1928. George Wittlinger, the son, survived his wife who devised her entire estate to him, and he died testate on January 3, 1961. His only child and his four sisters predeceased him. One sister, Amelia, devised her estate to George and some of the plaintiffs. By his will George devised all his property "to my friends, Howard Willis and Mary Willis," who are the defendants in this action.

The plaintiffs are the living children of the sisters of George, or, in the case of a deceased child of a sister, the living children of that deceased child. They brought this action for partition, claiming title by inheritance or devise through the sisters of George. Their complaint prayed for a construction of the two deeds, an accounting, and the ap-

pointment of a trustee. The defendants filed a counterclaim, asserting title to the property under George's will.

The trial court held that the deed to the 160-acre tract conveyed a joint life estate to George and his wife, followed by a contingent remainder to the heirs of the body of George and an alternative contingent remainder, in case George died leaving no heirs of the body, to his sisters as a class. And relying on *Drury* v. *Drury,* 271 Ill. 336, the court adopted the view that the latter remainder was contingent on survivorship and that since all of George's sisters predeceased him, no interest in the 160-acre tract passed as a part of their estates. The court then held that since neither contingency had occurred, the reversion that remained in the grantor descended to George Wittlinger and his four sisters as the heirs of the grantor.

As to the 40-acre tract, the trial court held that George and his wife took a fee subject to alternative executory devises, first to the heirs of George's body and, if none survived him and his wife, then to his sisters. Again relying on the *Drury* case, the court held that both executory devises failed and that the fee in George and his wife therefore became absolute at his death.

Before we consider the effect of the *Drury* case upon these conveyances, it is necessary to analyze them to determine what interests they created. As to the 160-acre tract, the deed gave George and his wife a joint life estate. The alternate gift to the sisters was a gift over upon a definite failure of issue, for if no heirs of the body of George should survive George and his wife, the property was to go over. The rule in *Shelley's case,* which would have converted the first remainder to a remainder in tail, therefore did not apply, (*Hauser* v. *Power,* 356 Ill. 521) and that remainder was a contingent remainder to those persons who might, at George's death, constitute the heirs of his body. The alternative gift over to George's sisters was an alternative

contingent remainder. The reversion in fee remained in the grantor (Carey & Schuyler, Illinois Law of Future Interests, sec. 4), and upon his death intestate in 1905 it descended to George and his four sisters. There was no merger of George's life estate with one-fifth of the reversion in fee, with a resulting *pro tanto* destruction of the alternative contingent remainders, (*Fuller* v. *Fuller,* 315 Ill. 214; *Lewin* v. *Bell,* 285 Ill. 227) because the conveyances were by warranty deed. (*Spicer* v. *Moss,* 409 Ill. 343; *Biwer* v. *Martin,* 294 Ill. 488.) We conclude that the trial court was right in its analysis of the basic nature of the interests created by this deed.

The deed to the 40-acre tract presents a different problem because the words "during their natural lives" do not follow the names of "Geo. Wittlinger and Edna Wittlinger, his wife." The trial court held that under section 13 of the Conveyances Act, (Ill. Rev. Stat. 1963, chap. 30, par. 12) this deed conveyed a fee-simple estate to George and Edna. But that statutory provision, which since 1872 has provided that words of inheritance are not required to be used in a deed in order to grant a fee, does not mean that every conveyance that lacks words of inheritance must be construed to create a fee in the grantee. We held otherwise in *Smith* v. *Grubb,* 402 Ill. 451, 460: "The manifest meaning of section 13 is that when words of inheritance are not used, every word, no matter where appearing in the deed must, if possible, be given weight in determining the estate granted." (See also, *Noe* v. *Moseley,* 377 Ill. 152.) The deed to the 40-acre tract contains no words of inheritance in the granting clause, and the significance of this omission is underscored by the fact that in the alternative gift over to George's sisters, the words "and to their heirs and assigns forever" are used. It thus appears that the grantor intended that the interest of George and Edna was bound to terminate with their deaths whether they died with heirs of the body of George surviving or not. Their interest could be

construed as a fee only by disregarding or refusing to give any weight to the words of the deed that indicate that their interest was not to survive them. We therefore hold that George and his wife acquired only a joint life estate in the 40-acre tract and that the subsequent gifts over were alternative contingent remainders of the same character as those created by the deed to the 160-acre tract.

This brings us to the issue of the descendibility of the interests that the deeds conveyed to George's sisters. The defendants, who claim under George, argue that the alternative gifts over to George's sisters were class gifts and that they were contingent not only upon the death of George and his wife without leaving heirs of the body of George surviving them, but contingent also on the sisters' surviving George and his wife. Since the sisters all predeceased George, the defendants assert that the alternative gifts over failed. This result, they say, is the necessary consequence of this court's decisions in *Drury* v. *Drury,* 271 Ill. 336, *Blackstone* v. *Althouse,* 278 Ill. 481, and *Farmer* v. *Reed,* 335 Ill. 156. The defendants also refer to *Golladay* v. *Knock,* 235 Ill. 412, and *Continental Ill. Nat. Bank & Trust Co. of Chicago* v. *Eliel,* 17 Ill.2d 332, in support of their position.

In the *Drury case,* this court said that where "a gift to a class is postponed pending the termination of a life estate, those members of the class, and those only, take who are in existence at the death of the life tenant." (271 Ill. at 341.) Plaintiffs contend first, that the gifts over to George's sisters were not class gifts, and that the *Drury case* therefore does not apply, and second, that the *Drury case* should be overruled or distinguished.

Plaintiffs' contention that the sisters were to take as individuals rather than as a class emphasizes that the gift over mentioned only sisters and not brothers, (George had no brothers at the date of the deed or later), that the grantor was probably of such an age that he did not expect addi-

tional children, and that the grantor and his wife reserved the use of two rooms in a house located on the 160-acre tract. Plaintiffs assert that these facts show that the grantor did not contemplate additional children and that the sisters "were as definitely ascertained as if they were specifically named." (*Cf. Blackstone* v. *Althouse,* 278 Ill. 481, 489.) Defendants, on the other hand, invoke the presumption that the capacity to bear children continues until death. They also cite authorities tending to support the view that the word "sisters" should be construed to include half-sisters, thus suggesting that even if the grantor was too old to contemplate more children, his wife might have remarried after his death and have had additional daughters who would fall within the class of George's "sisters."

It may be, as the plaintiffs urge, that by the references in the deeds to "the sisters of the said George Wittlinger", the grantor intended to point to the four sisters who were living when the conveyances were made. But there is no evidence in the record as to the age of the grantor or his wife when the deeds were executed, or as to the age of George and his sisters. Nor is there any evidence as to the grantor's health or financial circumstances. The absence of such evidence makes it difficult to say with conviction that the grantor, in framing the gifts over to the sisters, had only the four daughters in mind, and had singled them out as effectively as though he had named them. The difficulty appears clearly if we assume that the grantor had another daughter after he executed these deeds. Absent a more compelling record it could hardly be supposed that by the words he used the grantor intended to exclude such a daughter. Upon the record before us it is more reasonable to conclude that the grantor referred to the sisters of George as a class, and we are thus brought to a consideration of the effect of *Drury* v. *Drury,* 271 Ill. 336.

Read in context, the statement in the *Drury* case seems to assert a rigid rule of construction to the effect that a gift·

to a class of a future interest, contingent on an event unrelated to survivorship, is also contingent on survivorship. The two earlier Illinois decisions·that the court relied upon in announcing this rule do not support it. One of them, *Brewick* v. *Anderson,* 267 Ill. 169, construed a will containing an express condition of survivorship; the other, *Handberry* v. *Doolittle,* 38 Ill. 202, was concerned with the time when a particular class should close and did not involve the question of whether all members of the class must survive in order to take.

The *Drury* rule has been vigorously condemned. (See Kales, Future Interests, pp. 382-385, 609 (2d ed., 1920); Carey & Schuyler, Illinois Law of Future Interests, pp. 341-345 (1941); Simes and Smith, The Law of Future Interests, pp. 113-14, 116-117 (2d ed., 1956); Restatement, Property, secs. 261, 296(2).) No reasons have been advanced in its support. On the facts of the *Drury* case itself, the rule operated to keep the property in the testator's line of descent, but whether that result would follow in any other case is entirely fortuitous, and it may be that such a result was not intended.

We therefore disapprove the *Drury* case and others purporting to follow it insofar as they announce as a mechanical and universal rule of construction that a class gift of a future interest which is contingent on an event other than survivorship is also contingent on survivorship. Subject to statutory prohibitions and considerations of public policy, the owner of property should be able to create such interests in his grantees as he wants them to have. There are no statutory prohibitions or policy considerations that militate against the creation of a transmissible interest in the sisters of George Wittlinger if that is what the grantor intended.

The question thus becomes one of determining, free from the complusion of any artificial rule of construction, what kind of an interest the grantor intended to transfer

by his deeds. The language is: "It is expressly understood that at the death of the said George Wittlinger and Edna Wittlinger, his wife, the said lands herein described shall revert to the heirs of the body of the said George Wittlinger. In case there be no heirs then the said lands shall revert to the sisters of the said George Wittlinger and to their heirs and assigns forever."

The right of the first remaindermen, the heirs of the body of George, to take the property, is expressly conditioned upon survival of George. The grantor attached no similar condition of survival to the right of the alternate remaindermen, the sisters of George, to take the property. On the contrary the gift over is "to the sisters of the said George Wittlinger and to their heirs and assigns forever." In determining the effect of the deeds, we see no justification for completely rejecting the last seven words in each deed, "and to their heirs and assigns forever", thus refusing to give effect to all of the words of the instrument.

While there is some support for the proposition that the phrase "and to their heirs" could be considered as words of purchase by reading the word "and" as "or," (see Kales, Future Interests, pp. 172-175 (2d ed., 1920) ; *cf. Golladay* v. *Knock,* 235 Ill. 412), the presence of the words "and assigns" makes such a construction unacceptable. If the word "and" is read "or", the language creates a substitutionary gift in favor of the "heirs and assigns" of George's sisters, who would take as purchasers. That a deceased sister's heirs should take as purchasers by way of substitution would be quite reasonable. But it is hardly reasonable to suppose that the grantor would create a substitutionary gift and at the same time designate the assigns of the named takers to take by way of substitution.

Despite the fact that the words "heirs and assigns" were unnecessary to create a fee, those words need not be treated as having no effect whatever. In fact, our decisions in *Smith* v. *Grubb,* 402 Ill. 451, and *Noe* v. *Moseley,* 377 Ill. 152, are

authority for the point that words of inheritance, though surplusage in a sense, are not always to be disregarded. In their ancient usage, the words "heirs and assigns forever" indicated an intent to grant a fee-simple estate—the largest known to the law and one of inheritable quality. We believe that those words, as used in these deeds, combined with all the other circumstances of this case, indicate that the interests of George's sisters should be considered to be of an inheritable quality. We therefore hold that the sisters' interests were not contingent on survivorship but were descendible and passed as a part of the sisters' estates. The defendants have no interest in the two parcels of land except to the extent that George acquired an interest therein, in addition to his life estate, under the will of his sister Amelia.

The decree is reversed and the cause is remanded, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded, with directions.*