Vernon Anundson, et al., Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellee, Raymond P. Kaepplinger, Petitioner-Appellant.

Gen. No. 52,100.

First District, Third Division.

April 25, 1968.

Rehearing denied and supplemental opinion July 9, 1968.

Richard M. Calkins, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Henry N. Novoselsky, Assistant Corporation Counsel, of counsel), for appellee.

Harry G. Fins, of Chicago, for William Harmon.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

On August 7, 1962, a decree was entered declaring certain provisions of the Chicago Zoning Ordinance unconstitutional as applied to the property at 5655 West Fullerton Avenue, Chicago, then owned by Vernon Anundson and his wife Selma. The decree provided that the minimum area regulations of the ordinance were null and void as applied and that plaintiffs had the legal right to construct a building containing eleven stores and offices, six single bedroom apartments and six efficiency or one-room apartments. The court further ordered the City of Chicago to receive and examine any application for a permit to erect such a building and reserved jurisdiction for the purpose of enforcing the decree.

The building has since been completed and contains stores, offices and apartments as allowed by the decree, but in addition and not allowed by the decree, it also contains an auditorium capable of holding 600 persons and a roof garden capable of holding 250 persons. So far as appears, the parking facilities required by the ordinance have not been provided.

On May 4, 1966, Raymond P. Kaepplinger, owner of the property immediately adjacent to the subject premises,

filed a petition alleging that the building did not conform to the declaratory judgment decree in that it contained the roof garden and meeting hall, and that no parking facilities were planned on the premises, wherefore he prayed that the court vacate the decree and enjoin further construction. The petition was denied and this appeal was taken.

Petitioner-appellant contends that the notice required by law to be served on the neighboring landowners did not accurately describe the building which the plaintiffs sought to construct and that the parking facilities required by the zoning ordinance have not been provided. The Anundsons, who were the plaintiffs below, do not appear in this appeal. The contractor William Harmon intervened and contested the petition. He appears before this court as the only contesting appellee and apparently the only person interested in the property. He raises no defense on the merits, but makes technical objections which we will later consider.

The property is located in a district designated for zoning purposes as a restricted service district or B4–1 zone, with respect to which the applicable ordinance requires 2,500 feet of lot space per dwelling unit. Plaintiffs sought the declaratory judgment in order to avoid this density regulation and thus obtain permission to construct a building with more dwelling units than would be ordinarily permissible. Only the density regulation was challenged and only the density regulation was invalidated by the subsequent decree.

In a zoning suit for a declaratory judgment, plaintiffs are required to serve written notice on all persons owning property within 250 feet of the premises, setting forth the date when the declaratory judgment action is to be filed and "a brief statement of the nature of the requested variation." Illinois Municipal Code, Ill Rev Stats, ch 24,

§ 11–13–8 (1967). In accordance with this provision, the following notice was served on the neighboring land-owners:

". . . please be informed that the undersigned will file a Declaratory Judgment in the Circuit Court of Cook County, within thirty (30) days of the date of this letter, to erect a three-story office and apartment building, containing approximately eleven (11) offices and eight (8) apartments, with adequate parking facilities, on the property located at 5655 West Fullerton Avenue, Chicago, Illinois."

None of the adjoining landowners receiving the above notice filed an appearance in the action.

While the case was pending, plaintiffs amended their pleadings without further notice to the neighboring land-owners. Both the court and counsel for the City observed at that time that the neighbors were entitled to notice of any substantial change in the pleadings and that plaintiffs were assuming whatever risk was created by the failure to serve amended notices on the adjoining land-owners. Nevertheless a decree was entered nullifying the density regulation of the ordinance as applied to the property and declaring that plaintiffs had the legal right to construct a building containing *eleven stores and offices, six single bedroom apartments and six efficiency or one-room apartments.*

The zoning ordinance requires that a building containing dwelling units of the number and kind described in the decree must have parking facilities on the premises for a minimum of seven cars and that the necessary parking spaces may not be situated beyond the premises "except as provided for as a Special Use." Chicago Zoning Ordinance, Chicago, Ill Municipal Code, ch 194A, § 8.11–2 (3) (1957, as amended to and including January 1, 1967).

The landowners were assured by the notice of the declaratory judgment suit that "adequate parking facilities" would be provided, and the court was given similar assurances prior to the entry of the decree. At that time the contractor Harmon testified:

"Q. Now, Mr. Harmon, on behalf of the owners of the property, have you arranged for parking facilities for the subject property?

"A. Yes, sir, we have on the premises eight parking facilities under roof and we arranged for 20 additional."

The building as now completed contains twelve apartments, eleven stores and offices, the meeting hall and the fourth floor roof garden. Eight of the rooms designated as offices contain bathtubs which, petitioner-appellant contends, is a clear indication that those offices will be used as additional apartments notwithstanding the provisions of the decree. There is no provision whatever for on-premise parking and, due to the addition of the meeting hall and roof garden, a total of 92 parking spaces would now be required to satisfy the zoning ordinance. Chicago Zoning Ordinance, supra, ch 194A, § 8.11–1 (6), (19).

It is clear from the foregoing that the notice to the adjoining landowners failed to describe accurately the proposed building, that the building does not correspond to the plans submitted to the trial court and that neither the court nor the neighboring property owners were advised of the intentions of the plaintiffs and their contractor to deviate from the purported plans. These facts were presented to the court when Kaepplinger filed his petition asking the court to vacate the declaratory judgment, enjoin further construction and grant other relief deemed equitable. The court at that time stated that it had never contemplated that plaintiffs were going to operate a dance hall on the property.

While the petition was designated as an action pursuant to Section 72 of the Civil Practice Act, it was in reality an intervening petition by an interested party bringing to the attention of the court the misrepresentations made both to the court and to adjoining landowners with respect to the character of the building being or about to be constructed. Relief is sought on the basis of the reservation of jurisdiction by the court.

As before noted, appellee Harmon makes no defense on the merits of the case. Instead, he contends (1) that the appeal must be dismissed because the petitioner-appellant did not include the parties in interest in the notice of appeal; (2) that only the City may prosecute an action for an ordinance violation; and (3) that the petition to vacate was not filed within the two year limit provided by Section 72 of the Civil Practice Act.

As to Point I, Supreme Court Rule 303, Ill Rev Stats, ch 110A, § 303 (1967) provides that the notice of appeal shall bear the title of the case, naming and designating the parties in the same manner as in the Circuit Court. The rule further provides that no later than seven days after the filing of the notice of appeal, the party filing it shall serve a copy on every other party and on any other person or officer entitled by law to notice of appeal. The original parties to the declaratory judgment action, Vernon and Selma Anundson and the City of Chicago, were named in the petition. When the petition was denied and the petitioner-appellant instituted this appeal, he designated all parties to the Circuit Court action in his notice of appeal, as required by court rule. The notice was timely filed and the proper parties were designated therein. Hence the only question is whether *copies* were served on those entitled thereto under Rule 303, supra. Copies of the notice of appeal were served on William Harmon and the City. During the interim between the declaratory judgment and the filing of the petition to vacate, the property had been conveyed to Reuben A. and

Eve Sonshine. When the instant appeal was taken the Anundsons therefore no longer held an interest in the property and accordingly were not served with notice of appeal.

■ An appeal will not be dismissed for failure to serve notice of appeal on parties who cannot be adversely affected by the reversal or modification of the order appealed from. Hofing v. Willis, 31 Ill2d 365, 201 NE2d 852; Weaver v. Hodge, 406 Ill 537, 94 NE2d 297; See, also, Fins, Illinois Court Practice Under the New Judicial Article, p 112 (1967).

People v. Wright, 75 Ill App2d 290, 221 NE2d 159 (Abst.) cited by the appellee is not in point. In Wright the City of Chicago had been a party plaintiff in a quasi-criminal prosecution and we held that the City had a continuing interest in the determination of the appeal and hence service of notice of appeal on the City was required.

■ The appellee argues that Reuben A. and Eve Sonshine should have been designated as parties to this appeal and served with notice of appeal. The intervening petition filed in this case is part of a continuing action which commenced with the declaratory judgment, and petitioner-appellant was therefore required to serve notice on the attorney of record for the original plaintiffs. This he did. Neither Reuben nor Eve Sonshine have ever been parties to this suit. At no time did they appear or show any interest therein. Yet it is incredible that they, as purchasers, did not have notice of the action or that Harmon, as their contractor, had not advised them of the filing of the petition. Petitioner-appellant contends that Harmon is the party actually in control of the property and suggests this as the reason for the Sonshines' failure to appear. Harmon's testimony, particularly his statements to the effect that the use of *his* property was being impeded, evidences a proprietary interest on his part and gives credence to petitioner-appellant's contention. As

successors to the Anundsons, the Sonshines must assume they had notice of the litigation and of the reservation in the decree and should have applied to the court for leave to become parties thereto. The appeal is not subject to dismissal because of failure to serve notice of appeal on the Sonshines. Chicago Title & Trust Co. v. Central Republic Trust Co., 289 Ill App 21, 6 NE2d 515; Toman v. Tufts, 323 Ill App 516, 56 NE2d 135.

██ In Point II, appellee contends that only the City may bring an action to prohibit an ordinance violation. Adjoining landowners may bring an action against a zoning violator after proper notice to the municipal authorities. Ill Rev Stats, ch 24, § 11–13–15 (1967). The trial court was not asked by the petitioner-appellant to prohibit the violation of an ordinance, but was asked to prohibit the violation of the terms of a decree which it had entered with a reservation for that purpose. The fact that the building over the construction of which the court maintained jurisdiction was in violation of the zoning ordinance as well as of the court's decree is not a defense by the party who committed the violation.

Appellee's final contention is that since petitioner-appellant filed his petition to vacate the decree more than three and one-half years after its entry, the trial court properly dismissed the petition in accordance with Section 72 of the Civil Practice Act. While the petition was framed as a petition to vacate, petitioner-appellant did not contest the provisions of the decree nor did he ask for re-adjudication of the plaintiffs' rights. He asks the court to compel compliance with the provisions of the decree in accordance with the reservation of jurisdiction to grant such relief. The petitioner-appellant could not have filed his petition before the violation became evident.

The ordinance requires parking spaces equal in number to 75 percent of the total number of dwelling units (ex-

clusive of efficiency units) and 50 percent of the total number of efficiency units. In the instant case this would amount to seven parking spaces. With reference to the meeting hall and roof garden, the ordinance requires parking spaces equal in number to 10 percent of the capacity provided. The meeting hall, as set forth in the construction plans, provides for a maximum of 600 persons and the roof garden for 250 persons. Hence parking must be provided for an additional 85 cars. The total number of parking spaces required therefore is 92. Chicago Zoning Ordinance, Chicago, Ill Municipal Code, ch 194A, §§ 8.11–2(3), 8.11–1(6), 8.11–1(19). The ordinance further provides that:

> "All parking spaces required to serve buildings or uses shall be located on the same zoning lot as the building or use served, *except as provided for as a Special Use; in which case*, buildings or uses may be served by parking facilities located on land other than the zoning lot on which the building or use served is located, provided such facilities are within 500 feet walking distance of a main entrance to the use served."

The building constructed varies from the ordinance in that it does not have adequate parking facilities nor can the necessary parking be provided on other premises without a Certificate of Special Use from the Zoning Board of Appeals. From the notice served on them the property owners could not have anticipated this variance nor could the trial court have anticipated it from the pleadings at the time the decree was entered.

The order is reversed and the cause is remanded with directions to enjoin further construction or use of the property in question until it conforms to the requirements of the applicable ordinance, and for such other and fur-

ther relief as is not inconsistent with the views herein expressed.

Order reversed and cause remanded with directions.

DEMPSEY, P. J. and SULLIVAN, J., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

William Harmon, the sole contesting appellee in this case, has substituted attorneys and obtained leave of this court to file an amended petition for rehearing. The petition amounts to a complete reargument of the case, raising issues not heretofore considered and reiterating arguments considered unsound in our opinion. Although Rule 367 (b) clearly states that reargument of an appeal shall not be made by means of a petition for rehearing (Ill Rev Stats, c 110A, § 367 (b) (1967)), we shall consider certain of the points raised.

The appellee now contends that the property was transferred to Reuben and Eve Sonshine on April 5, 1965, and hence they were necessary parties and should have been named in Kaepplinger's petition. He cites section 54 of the Civil Practice Act which provides that when a change of interest occurs following commencement of a cause of action and it becomes necessary to bring another person before the court, "the action does not abate, but on motion an order may be entered that the proper parties be substituted or added. . . ." He contends that this provision of the statute applies to the instant case, that Kaepplinger knew the property had been transferred to the Sonshines and failed to join them. This point is based on a misconception of the nature of these proceedings. Kaepplinger's petition was filed in the same proceeding in which the decree was entered and bore the caption of the original case. It is not a suit between

Kaepplinger and the owners of the property nor is it a suit on behalf of Kaepplinger. It is a proceeding in which Kaepplinger has brought to the attention of the court the fact that the building being erected on the property adjoining his was being constructed in violation of the zoning laws and the provisions of a decree entered by the court, in which decree the court had reserved jurisdiction for the purpose of enforcing provisions of the decree. The decree provided that the plaintiffs Vernon and Selma Anundson "and all persons claiming by, through or under them" had the right to erect a three-story building containing 11 stores or offices, 6 single-bedroom apartments and 6 efficiency-apartment units. The property was thereby exempted from the provision in the ordinance fixing a ratio between the number of dwelling units and the lot size. The remaining provisions of the ordinance remained in full force and effect. The City of Chicago was directed to receive and examine any application for a permit to erect such building in accordance with the spirit and intent of the decree, and *the court reserved jurisdiction for the purpose of enforcing its provisions.*

In 1966 Kaepplinger filed his intervening petition and charged that the decree was being violated in the following respects:

> (a) The building under construction contained a fourth floor roof garden capable of accommodating 250 people;
> (b) It contained an auditorium capable of accommodating 600 people;
> (c) Notwithstanding the assurances of counsel to the court, there were no parking facilities on the property; and
> (d) The plans submitted to the Building Department of the City of Chicago were not in conformity with the plans presented to the court.

222

It further appeared that eight of the rooms described as offices contain bathtubs so that, as counsel for the appellant has argued, they may be easily and surreptitiously converted into dwelling units. As before noted, no parking facilities were provided although the building as now constructed, with a dance hall and auditorium, would under the ordinance require a total of 92 parking spaces on the premises. The building thus violates both the ordinance and the declaratory judgment decree.

It is clear that the contractor Harmon was violating the decree by erecting a nonconforming structure on the property. His actions were contrary to the decree whether he was operating on his own behalf (as may be inferred from his testimony) or on behalf of the legal owners. He appeared and contested the petition and he is undoubtedly subject to the jurisdiction of the court. As to the Sonshines, they succeeded to whatever rights the Anundsons acquired through the decree and are bound by the same conditions imposed on the Anundsons. They cannot be allowed to violate the decree either by their own action or through the agency of their general contractor. The court having maintained continuing jurisdiction had ample power to enforce its original order and should have ordered Harmon to conform or have prohibited further construction or usage of the property.

The developers of this property deliberately chose to risk violating the decree in 1962 when they amended their complaint for the declaratory judgment without giving additional notice to the neighboring property owners. The trial court at the hearing admonished them as follows:

> "You can go ahead and finish your case. I won't interrupt your trial. If it goes to the Supreme Court I would be reversed on it."

When Kaepplinger brought the violations to the attention of the court in 1966, the building was well on

the way to completion and the trial court was obviously loathe to intervene, presumably since the damage had already been done. The court however recognized that the owners were violating the terms of the decree and said:

> "There is no question about it that the decree contemplated off-street parking and the decree also contemplated that the existing ordinances applicable to the building would be adhered to.
> "Now, what the ordinance requires is that off-street parking be provided, and if they don't want to utilize this space for their seven or eight automobiles they will have to go and apply for a special use."

Plaintiffs' counsel argued that there was no violation of the ordinance because the building had not been completed and the court responded:

> "Certainly there has been a violation. You have now admitted it. You have no provision for off-street parking.
>
> . . . . . .
>
> "You can't comply unless you get a certificate of special use, and you are not complying."

The court further said:

> "I wouldn't have entered the decree if I had known about the parking. They told me they had complied with the parking requirements."

The parties apparently believed that a completed building would save them from further legal regulation. It is our opinion that the integrity of the law and the orders of a court are at stake and are of prime importance.

The petition for rehearing is denied.