as used in related sections, and, consequently, that the petition does state a cause of action.

The judgment will therefore be reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

PARDEE and WASHBURN, JJ., concur.

GASTON ET AL. *v.* MOORE ET AL.

MOORE, ADMX., *v.* MOORE ET AL.

(Decided December 1, 1930.)

*Messrs. Shotts & Millikin,* for Dwight M. Gaston et al.

*Mr. P. P. Boli,* for Elizabeth M. Moore, administratrix.

*Messrs. Williams, Sohngen, Fitton & Pierce,* for the Dollar Savings & Loan Company.

*Messrs. Andrews, Andrews & Rogers,* for the Citizens Savings Bank & Trust Company.

*Messrs. Giffen & Haines,* for David B. Moore.

*Messrs. Shank & Shank,* for May Burrill Neal.

HAMILTON, J. This case is here both on appeal and error.

The original action below was brought by the plaintiff, Elizabeth B. Moore, widow of Hugh M. Moore, to sell real estate claimed to be the property of Hugh M. Moore, plaintiff's decedent, to pay debts of said estate.

The petition sought to sell two tracts, designated tract 1 and tract 2. There was no contest over the right of the plaintiff to sell tract 2, and it was sold and the proceeds distributed. The controversy is over the ownership of tract 1.

The plaintiff alleged in her petition that her decedent, Hugh M. Moore, died seized in fee simple of tract No. 1; that said tract 1 descended to Hugh M. Moore, deceased, from his first wife, Gertrude Burrill Moore.

The defendants, Dwight M. Gaston and others, joined in an answer and cross-petition. Others of the defendants filed separate answers.

The defendants Dwight M. Gaston and others in their answer and cross-petition aver that: "Any right, title or interest in said real estate referred to as Tract 1 in the petition, owned by the said Hugh M. Moore, absolutely ceased and determined at the time of his death, and defendants therefore deny that the said Hugh M. Moore has any interest or title in and to said Tract 1, described in the petition, which can be sold by the plaintiff." They further "deny the right of the plaintiff to sell said real estate."

Defendants further allege that said real estate described as tract 1 was devised to the said Hugh M. Moore under the will of his grandmother, Jeanette Z. Gilchrist, who died on or about the 19th day of January, 1895, owning said real estate described as tract 1 at the time of her death, which said will is probated and on file in the probate court of Butler county, Ohio.

Defendants further allege that: "Under Item 8 of the will of said Jeanette Z. Gilchrist the said Hugh M. Moore was devised said Tract 1, provided, however, in the event of his death leaving no child or children surviving him, then in that event said real estate passed to the absolute ownership of four of the sisters of testatrix and one nephew, share and share

alike.'' Said will further provided that in the event
the said Hugh M. Moore died leaving no child or chil-
dren surviving him, the heirs at law are to take the
respective shares of those deceased, except the share
of her nephew, and, in the event of his death before
partaking of his share, then his share shall pass to
the ownership of her four sisters above named, or to
their heirs at law.

By way of cross-petition, these defendants set up
the death of Jeanette Z. Gilchrist, the grandmother
of said Hugh M. Moore; that she died testate on the
19th day of January, 1895; and that she disposed of
real estate in question under item 8 of her will. The
cross-petition then sets up a copy of item 8, and
further alleges that the said Hugh M. Moore died on
or about the 9th day of September, 1927, in posses-
sion and control of said property; that since the
death of said Hugh M. Moore, Elizabeth B. Moore,
as his administratrix, claims the right to possess and
control said real estate and to sell the same to pay
the debts of said decedent, and then sets up the rela-
tionship of the parties in the case.

· It is further alleged in the cross-petition that un-
der item 8 of the will of Jeanette Z. Gilchrist said
Hugh M. Moore took a fee-simple estate in the real
estate therein described, which estate determined
and ceased upon his death leaving no child or chil-
dren to survive him, and thereupon became vested in
these defendants, and they aver that they are now
the fee simple owners of tract 1 and entitled to the
possession and control thereof.

The mortgage lien of the Dollar Savings & Loan
Company of Hamilton, Ohio, is challenged in the
cross-petition. It is claimed that the mortgage is in-

effectual to create any lien as against these parties, and defendants ask that the same be canceled of record.

They further allege the collecting and appropriating of rents and profits from the property by Elizabeth B. Moore, the widow and administratrix, and ask that the court decree that they are the owners in fee simple and are entitled to the possession of the real estate therein described, designated tract 1; that the court will find that the mortgage upon the real estate claimed to be held by the Dollar Savings & Loan Company of Hamilton, Ohio, is null and void, and constitutes no lien upon the said real estate, and will order same canceled of record; and that the court will find that from the time of the death of the said Hugh M. Moore these defendants are entitled to an accounting of the rents and profits derived from the above-described real estate from Elizabeth B. Moore as administratrix of the estate of Hugh M. Moore, deceased, and Elizabeth B. Moore as widow of said decedent.

It becomes at once apparent that the main question in the case turns upon the construction given to item 8 of the will of Jeanette Z. Gilchrist. It may be well to state here that the second question is made by the plaintiff below, concerning the force and effect of certain quitclaim deeds made by the sisters of Jeanette Z. Gilchrist, Hugh M. Moore, and some heirs at law of the four sisters, which quitclaim deeds were made to Gertrude Burrill Moore, the first wife of Hugh M. Moore. The force and effect of these deeds will be considered later.

The facts are presented upon an agreed statement of facts incorporated in the bill of exceptions.

The agreed statement of facts contains the whole will of Jeanette Z. Gilchrist, but since the other items in the will throw no light on the construction to be given to item 8, we will only set forth a copy of item 8 in this opinion:

"I give and bequeath to my grandson Hugh M. Moore, who now resides with me, all the entire rest and residue of my estate both real estate and personal property of every kind and description and I hereby authorize my executor herein after named to give over into the possession of my said grandson all the said rest and residue of my estate as soon as possible after my decease, especially all notes and cash in Bank, so that my said grandson can use the same for his own benefit in completing his education and place himself in a position to practice his chosen profession, provided however that in the event of the decease of my said grandson Hugh M. Moore and that he leave no child or children to survive him, then and in that event my real estate is to pass to the absolute ownership of four (4) of my sisters named as follows: Adeline H. Barbour, Armanilla H. Gaston, Emily O. Miller and Christiana Gray and my nephew Judah H. Gilchrist, share and share alike, and in the event of the decease of any or all of my said four (4) sisters or my said nephew prior to their partaking of their respective shares conditioned as before stated, to-wit: that the said Hugh M. Moore die and leave no child or children surviving him then and in that event the heirs at law of such are to take the respective shares of those deceased, except the share of my nephew Judah H. Gilchrist in the above bequest in item eighth, in the event of his decease before partaking of his share, then his share I direct

is to pass to the ownership of my four (4) sisters named above or to their heirs at law as before mentioned.''

Plaintiff below contends here that the language employed in the will, ''provided however that in the event of the decease of my said grandson Hugh M. Moore and that he leave no child or children to survive him, then and in that event my real estate is to pass to the absolute ownership of four (4) of my sisters,'' etc., meant the death of the grandson Hugh M. Moore, leaving no child or children surviving him during the lifetime of the testatrix. The contention of the defendants, cross-petitioners, is that this provision referred to the time of the death of Hugh M. Moore, the first taker, and that that being so, the grandson Hugh M. Moore took a defeasible fee in the real estate, subject to being defeated only in the event that the said Hugh M. Moore died leaving no child or children surviving him.

Many cases are cited both for the plaintiff in error and the defendants in error, involving similar questions; but as in all cases of construction of wills, they are of little aid other than on one or two fundamental principles, which will be referred to.

It is the rule, and therefore needs no citation of authority, that in construing a will the intention of the testator is to be arrived at, if possible, from the context of the will.

Some text-writers and some decisions seem to disagree with the Ohio rule involving questions such as the one presented here. However, since the question has been decided not only once, but many times, in Ohio, it is not necessary to go outside for authority

for the rule governing the construction of the language used in item 8.

The first case in which a similar question arose is the well-considered and approved case of *Parish's Heirs* v. *Ferris,* 6 Ohio St., 563, in which the syllabus reads:

"Where there is a devise in fee to A, but if he 'die without heirs,' or 'without children,' or 'without issue,' then to B in fee, the words, 'if he die without issue,' or words of similar import, are to be inter·preted according to their popular and natural meaning, and as referring to the time of the death of A, unless the contrary intention is plainly expressed in the will, or is necessary to carry out its undoubted purposes; and if A have no children or issue living at the time he dies, B takes under such devise."

Applying this pronouncement to the case under consideration, we have here a devise in fee to "Hugh M. Moore, \* \* \*" but if he die, and leave "no child or children surviving him, then \* \* \* to the ownership of my four (4) sisters named above." The words "my decease \* \* \* and leave no child or children surviving him" must be held as referring to the time of the death of Hugh M. Moore, unless the contrary intention is plainly expressed in the will, or is necessary to carry out its undoubted purposes.

In the case of *Niles* v. *Gray,* 12 Ohio St., 320, the Supreme Court, following the *Parish's Heirs case,* construed a will which provided:

"Item third.—I give and bequeath unto my youngest daughter, Margaret Harper, the remaining part of my real property.

"Item fourth.— \* \* \* It is also to be under-

stood that should my youngest daughter, Margaret
Harper, die without any legitimate heirs, her part
of my real estate shall fall to my eldest son, Matthew
Harper.''

And in that case it was held that ''under items
third and fourth taken together, Margaret took an
estate in fee simple, subject, however, to be de-
termined by the contingency of her dying without
issue living at the time of her death, on the happen-
ing of which, the estate would pass over to Matthew,
by way of executory devise.''

The same rule is announced in *Collins* v. *Collins,*
40 Ohio St., 353; *Piatt* v. *Sinton,* 37 Ohio St., 353;
and also in *Taylor* v. *Foster's Admr.,* 17 Ohio St.,
166.

That the rule pronounced in the cases herein
cited is still the law was decided by the Supreme
Court of Ohio in the case of *Briggs* v. *Hopkins, Exr.,*
103 Ohio St., 321, 132 N. E., 843. The syllabus in the
*Briggs case* is:

''Where there is a devise or bequest to one coupled
with the provision that if he die without issue such
property shall go to another, the words 'die without
issue' are to be interpreted as referring to the time
of the death of the first taker, unless a contrary in-
tention and purpose of the testator is clearly mani-
fested.''

This being the rule of construction, we must look
to item 8 of the Gilchrist will to ascertain whether
or not a contrary intention and purpose of the
testatrix is clearly manifested.

Now what is there in item 8 of the will to show a
clear manifestation of contrary intention than that

the time referred to was the death of Hugh M. Moore, the first taker?

The decision of our Supreme Court in the case of *Fetterman* v. *Bingham,* 115 Ohio St., 35, 152 N. E., 10, throws some confusion on the proposition before us. While the syllabus in the *Fetterman case* does not conflict with the rule, the court in the opinion seems to depart from the rule as to construing the will from its context, but goes outside and considers some circumstances which are not contained in the will itself. In view of the Fetterman decision we have examined and re-examined the will in question here, and we have been unable to find any expression which would show the testatrix intended any other than the popular and natural meaning, when she said that "in the event of the decease of my said grandson Hugh M. Moore and that he leave no child or children to survive him." The ordinary and popular meaning would refer to the time of Moore's death and not the death of the testatrix.

The will clearly shows the intention to give to her grandson Hugh M. Moore all her real estate and personal property, and that she wanted him to have the immediate possession and use of her personal property in order that he might use it for his own benefit in completing his education and placing himself in a position to practice his chosen profession. She must have contemplated that this personal property was sufficient to place him in a position to practice his chosen profession.

It would then appear that she wanted the real estate kept in her family, when she provided as she did, that if her grandson should die leaving no child

or children, then it should go to her sisters and one nephew, share and share alike.

On a casual reading it would seem the will offered no difficult solution. The ordinary mind would conclude that she intended, as above suggested, an immediate and early distribution of her personal property to the grandson; he to have the use of the fee in the real estate, defeasible in the event he left no child or children at his death, when it was to go to her sisters, the next object of her bounty. It seems to us that it would take a strained and technical construction to arrive at the conclusion sought by the plaintiff below, to the effect that she meant on the death of her grandson during her lifetime without children, especially in view of the fact that if her grandson should die before her death she could make a new will, disposing of her property any way she saw fit under the circumstances. We find nothing in the will to show any contrary intention and purposes, and the clause in question undoubtedly meant in the event the grandson left no child or children surviving him at his death. Therefore, Hugh M. Moore took a fee determinable upon his dying without issue living at the time of his death.

It appears that prior to the death of Hugh M. Moore, and prior to the death of his first wife, there was an attempt made to clear the title and make it an indefeasible fee-simple title in the then living wife of Hugh M. Moore. To carry out this suggested merger of interests, Hugh M. Moore made a deed to his then living wife, Gertrude Burrill Moore. All of the sisters or their then living heirs at law signed quitclaim deeds to Gertrude Burrill Moore. Gertrude Burrill Moore, the wife, predeceased her

husband, Hugh M. Moore, and it is claimed that there being no child or children of the marriage he became seized of the property in fee by descent from his deceased wife.

The effect claimed for these deeds is challenged on the ground that the grantors had no interest at the time to convey; that the conveyances could not deprive the heirs at law of their rights under the will.

It is argued by counsel for plaintiff below that the words "heirs at law" used in the will were words of limitation, and that they would only take as heirs at law through the deceased sisters, while the claim is made on behalf of the cross-petitioners that the will transmits the property by devise to the heirs at law in the event of the death of any of the said four sisters.

As heretofore found, the will gave to Hugh M. Moore a fee, subject to the contingency therein stated. No other person could have an interest in the fee until after the death of Hugh M. Moore, at which time it would have to be ascertained whether or not he left any child or children surviving him. If he did, his heirs took the indefeasible fee-simple title. Up to that time the sisters and the nephew of the testatrix had only a possible interest, depending upon their surviving Hugh M. Moore. It could not vest until the death of Hugh M. Moore. If he died leaving no child or children surviving him, the sisters and the nephew of the testatrix, if living at the time, took the fee by way of executory devise.

At the time of the death of Hugh M. Moore, the nephew and three sisters were deceased. Their heirs at law could only be ascertained after the decease

of Hugh M. Moore, and the decease of those who predeceased Moore. The will provided that "in the event of the decease of any or all of my said four (4) sisters or my said nephew prior to their partaking of their respective shares conditioned as before stated * * * the heirs at law of such are to take the respective shares of those deceased."

It was then provided that the share of the nephew, in the event of his death before partaking of his share, should pass to the ownership of the four sisters or their heirs at law, "as above mentioned."

Our conclusion is that the grantors at the time of the execution of the quitclaim deeds had no assignable or transferable interest in the real estate in question, and the deeds were ineffective to convey any title. Nor were they such as to bar their interests, which became effective upon the death of Hugh M. Moore. Had the deeds contained covenants of general warranty, we would have a different question, the effect of which it is not necessary to consider here; further, that the heirs at law of any deceased sister took by way of executory devise under the will, and not as representatives of their deceased ancestor. This conclusion is supported by the cases of *Blackstone* v. *Althouse,* 278 Ill., 481, 116 N. E., 154, L. R. A., 1918B, 230; the notes and cases in L. R. A., 1918B, page 230; *Ebey* v. *Adams,* 135 Ill., 80, 25 N. E., 1013, 10 L. R. A., 162; and *Rings, Admr.,* v. *Borton,* 108 Ohio St., 280, 140 N. E., 515.

We further conclude that the mortgage of the Dollar Savings & Loan Company of Hamilton, executed to it by Hugh M. Moore and Elizabeth B. Moore, his then present wife, on the 21st day of June, 1926, is ineffectual to create a lien on the real

estate in question as against the interests of the cross-petitioners herein. The same may be canceled of record on the records of Butler county, Ohio.

It follows that the cross-petitioners are entitled to an accounting for rents and profits from the plaintiff below and Elizabeth B. Moore, the widow, from and after the date of the death of said Hugh M. Moore, September 9, 1927.

A decree may be entered accordingly in the appeal case.

In the error case, the judgment will be reversed, and judgment will be entered here in favor of the cross-petitioners.

If the parties cannot agree on a settlement of the rents and profits, this court will appoint a master to ascertain the amount.

*Decree for plaintiff in cause No. 474.*

*Judgment reversed in cause No. 473.*

Ross, J., concurs.