2024 IL App (3d) 230592

Opinion filed March 26, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0592 Circuit No. 23-CF-1123 |
| DAMARIAN WOODS, | ) ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court, with opinion.
Justices Holdridge and Albrecht concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Damarian Woods, appeals the Will County circuit court's order denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act or the Pretrial Fairness Act (collectively, the Act). On January 18, 2024, we entered a minute order dismissing defendant's appeal, based on his failure to present any argument to this court, other than bare contentions in the form of checked boxes in his notice of appeal.

¶ 2    Defendant petitioned this court for rehearing under Illinois Supreme Court Rule 367 (eff. Nov. 1, 2017). We have received the State's answer to the petition. For the following reasons, we grant defendant's petition for rehearing, withdraw our January 18, 2024, order dismissing defendant's appeal, and now issue this opinion, affirming the circuit court's order, in its place.

¶ 3                                I. BACKGROUND

¶ 4    On July 13, 2023, a grand jury indicted defendant on three counts of first degree murder (each on a different theory) (720 ILCS 5/9-1(a)(1), (2) (West 2022)) and one count of aggravated battery (*id.* § 12-3.05(e)(1), (h)). Imari Bloodson and defendant's brother, Amarion Woods, were charged in the same indictment.[1] The charges stemmed from the fatal shooting of Anthony Saucedo, which occurred in the parking lot of a public park in Plainfield on June 15, 2022. Defendant was 17 years old at the time of the shooting. Some of the occurrence was captured on surveillance video. An assistant public defender represented defendant. Initially, the court set defendant's bond at $5 million, 10% to apply. Defendant did not post and was detained pending trial.

¶ 5    On October 23, 2023, defendant filed a motion for pretrial release. He asserted that, while first degree murder is a detainable offense, he did not pose a real and present threat to the safety of any person, any persons, or the community. That same day, the State filed a verified petition to deny defendant release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)).

¶ 6    The court heard the matters on October 30, 2023. The State provided the following factual basis. On June 15, 2022, Bloodson engaged in a text conversation with Saucedo and offered to sell Saucedo a firearm. At approximately 9:50 p.m., Bloodson and Saucedo arrived in the parking lot

---

[1]Bloodson was charged with another offense, possession of a stolen firearm. The State asserts that defendant was also charged with this offense, but the indictment lists Bloodson as the only defendant on that count.

at Bott park, driving separate vehicles, and parked "two spots away from each other." Saucedo drove a Jeep and was alone. Bloodson drove a red sedan with four passengers: defendant, seated in the front passenger seat, and Amarion, David Woods, and Antonio Funches, seated in the rear passenger seats. At that time, several games at the park had just ended.

¶ 7 About a minute later, Bloodson exited the sedan alone and approached the driver's window of Saucedo's Jeep. Saucedo remained in the driver's seat of his Jeep as he and Bloodson engaged in a brief conversation. Defendant, who was wearing a ski mask, and Amarion then exited the sedan and approached the Jeep. Bloodson returned to the sedan. Defendant and Amarion entered the Jeep and sat in the front passenger seat and the rear seat behind Saucedo, respectively. The surveillance footage showed an apparent struggle inside the Jeep, followed by defendant exiting the Jeep and firing a gunshot into the Jeep toward Saucedo.

¶ 8 At that point, David and Funches exited the sedan and approached the Jeep. Funches reached inside the half-open driver's window, and then he and David, who was in front of the Jeep, retreated to the sedan. Defendant and Amarion also retreated to the sedan, and Bloodson drove away.

¶ 9 When the police arrived, Saucedo was dead. An autopsy showed Saucedo had been shot seven times. One shot entered the back right side of his head and exited by his nose. Another shot entered the left side of his neck, severed his carotid artery and jugular vein, and exited the right side of his neck. He also had wounds on his right arm, left leg, neck (graze wound), chest (graze wound), and calf (graze wound). Evidence technicians recovered three 9-millimeter shell casings outside the front passenger side of the Jeep. They also recovered four .40-caliber shell casings where Amarion was seated. A magazine containing six rounds of live ammunition was found on Saucedo's lap. No firearms were recovered from the scene.

3

¶ 10    During their investigation, the police spoke with Bloodson and David. Bloodson confirmed defendant and Amarion entered Saucedo's Jeep but would not say why the men were in the park or what happened inside the Jeep. David told the police he believed they went to the park to buy cannabis. He exited the vehicle when he heard a commotion inside the Jeep. He saw a revolver in Saucedo's hands as he walked around the front of the Jeep. As they left the scene, the men did not discuss what had occurred inside the Jeep other than defendant asking Amarion, "Are you good?"

¶ 11    David and Funches testified before the grand jury in exchange for immunity. David's testimony was consistent with his statement to police, except he did not testify he saw a revolver in Saucedo's hands. In addition, he testified he did not see a gun in defendant's or Amarion's possession immediately before or after the incident. Funches testified he, like David, believed they were going to the park to buy cannabis. He left the sedan because he observed a commotion. He saw Saucedo "pulling a revolver up from the front seat and trying to point it to the back of the Jeep." He did not see defendant or Amarion with a gun either before or after the incident in the Jeep but confirmed defendant was wearing a ski mask at the time.

¶ 12    The police also executed a search warrant on defendant's phone and recovered "text chats with people about the incident." In the texts, defendant claimed self-defense because Saucedo tried to rob them, claimed he could not be identified because he was wearing a ski mask, and deflected blame to Amarion.

¶ 13    The police also interviewed associates of Saucedo. The associates knew Saucedo to carry a black revolver in his glove box. The associates also believed Saucedo had robbed two individuals, one of a gun and the other of cannabis.

¶ 14    The State also proffered that defendant was charged in juvenile court with aggravated unlawful use of a weapon (a "Ruger 9mm"). This offense took place on January 13, 2023, that is,

4

after Saucedo's shooting but before defendant was charged in this case. On January 24, 2023, defendant was adjudicated delinquent by admission in exchange for 18 months' probation.

¶ 15    In argument, the State emphasized that defendant's release posed a risk to the community's safety, noting the offense jeopardized more than just the victim's safety because it was committed at a public park when patrons were present.

¶ 16    Defendant offered a group exhibit containing "character letters and at least two photos." The exhibit is not part of the record on appeal, but we accept counsel's representation at the hearing that the letters demonstrated defendant's "character," family support, and community support. Defense counsel argued the State failed to show defendant was "a real threat to a person based on the specific articulable facts" of the case. She noted defendant was 17 years old at the time of the offense, was currently 18 years old, and had recently graduated from high school. If released, defendant would reside with his mother, who was present in court, along with his sister and two nephews. Further, defendant had been "a tremendous support to his family," often watching his nephews while his sister worked and went to school. Ever since defendant was placed in custody, his family suffered hardship—defendant's sister struggled to find childcare.

¶ 17    Counsel also argued the State failed to establish that no conditions could mitigate the purported risk posed by defendant's release. She asserted both GPS monitoring and home confinement would mitigate any risk caused by defendant's release, again pointing to defendant's family support, stable home, and completion of high school. She also noted there was at least a question of self-defense, as David and Funches had both stated they saw Saucedo holding a revolver.

¶ 18    The circuit court denied defendant pretrial release. The court based its decision on (1) the nature and circumstances of the offense; (2) defendant's criminal history, which was indicative of

5

violent, abusive, or assaultive behavior; and (3) defendant's known possession of or access to weapons. Specifically, the court noted defendant was captured on video committing the offense, in a crowded park while wearing a ski mask, and his intervening admission in juvenile court to a weapons offense.

¶ 19 Defendant appealed under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). Defense counsel prepared the notice of appeal on the form approved by the supreme court. She indicated defendant was appealing the court's October 30, 2023, order denying him pretrial release but left blank the lines next to the heading "Relief Requested." As grounds for relief, counsel checked boxes indicating defendant was raising two contentions on appeal: the State failed to prove by clear and convincing evidence that (1) defendant posed a real and present threat to the safety of any person, persons, or the community, based on the specific articulable facts of the case, and (2) no condition or combination of conditions could mitigate the threat posed by defendant's release or the risk of willful flight. Counsel did not provide any explanation or argument on the lines provided on the form. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant on appeal.

¶ 20 On November 29, 2023, the State moved to dismiss defendant's appeal. Citing *People v. Inman*, 2023 IL App (4th) 230864, the State argued the appeal should be dismissed because defendant's notice of appeal was deficient—he merely checked boxes and did not describe the grounds for relief or provide argument. Further, the State posited defendant should not be allowed to correct the deficiency via a memorandum. According to the State's motion, OSAD told the State it would file an objection. OSAD never did so. On December 8, 2023, we denied the State's motion. See *People v. Duckworth*, 2024 IL App (5th) 230911, ¶ 5 (timely filing of a notice of appeal is the only jurisdictional step in perfecting a Rule 604(h) appeal).

6

¶ 21    On December 15, 2024, OSAD notified this court that it would not file a memorandum in support of defendant's appeal. The State filed a memorandum, opting to respond to the bare contentions of defendant's notice of appeal and defend the circuit court's detention order.

¶ 22    On January 18, 2024, we entered the following minute order, dismissing the appeal:

"Defendant, Damarian M. Woods, appeals from the order of the Will County circuit court denying pretrial release. Defendant has not filed a memorandum but has instead indicated his intention to stand on the notice of appeal. However, upon review of the notice of appeal, defendant has solely checked boxes on the form notice of appeal, without providing any further details or explanation. While defendant need not file a memorandum and may stand on the notice of appeal, Illinois Supreme Court Rule 604(h)(2) (eff. Sept. 18, 2023) specifically states, 'The Notice of Appeal shall describe the relief requested and the grounds for the relief requested.' The notice of appeal form provides space for defendant to describe such grounds, but defendant has failed to do so. As a reviewing court, we are entitled to have the issues and argument clearly defined, and it is not our obligation to act as an advocate for defendant. *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303-B, ¶ 50. Where defendant has failed to satisfy the requirements of Rule 604(h)(2), we find that he has forfeited review. We, therefore, dismiss the appeal.

Appeal dismissed."

¶ 23    On February 8, 2024, defendant petitioned for rehearing. He did not assert we overlooked or misapprehended something. Rather, he discussed three supervisory orders entered by our supreme court in unrelated cases: *Grant v. Justices of the Illinois Appellate Court, Third District*, No. 130420 (Ill. Feb. 8, 2024) (supervisory order), *Mateo v. Justices of the Appellate Court, Fifth District*, No. 130409 (Ill. Feb. 7, 2024) (supervisory order), and *Ali v. Justices of the Appellate*

7

*Court, Fifth District*, No. 130383 (Ill. Feb. 2, 2024) (supervisory order). In those cases, defendant noted, the appellate court dismissed the defendants' appeals under similar circumstances, and the supreme court directed the appellate court to vacate the dismissals and consider the defendants' appeals on their merits.

¶ 24    Defendant provided the following argument in his petition:

"As in *Grant*, *Ali*, and *Mateo*, [defendant] filed a timely notice of appeal [citation], and yet, his appeal was not considered on the merits. The Illinois Supreme Court orders in *Grant*, *Ali*, and *Mateo* indicate that [defendant's Rule] 604(h) appeal should be heard on the merits. As such, he asks this Court to reconsider the dismissal of his appeal in light of the Illinois Supreme Court's supervisory orders in *Grant*, *Ali*, and *Mateo*, and to grant rehearing, vacate its order dismissing his appeal and consider the appeal on its merits."

The State answered defendant's petition, arguing dismissal was a proper disposition where defendant had failed to provide any argument in support of his appeal.

¶ 25                                II. ANALYSIS

¶ 26    We first explain the basis for our finding that defendant forfeited his claims on appeal.

¶ 27    Under the new pretrial release provisions of article 110 of the Code, all criminal defendants are "eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (West 2022). However, a defendant may be denied pretrial release if the State, upon a verified petition, proves by clear and convincing evidence the following propositions:

"(1) the proof is evident or the presumption great that the defendant has committed [a qualifying] offense ***, and

(2) *** the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***, and

8

(3) no condition or combination of conditions [contained in section 110-10(b) of the Code] can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***." *Id.* § 110-6.1(e).

¶ 28     A defendant has the right to appeal an order denying his pretrial release. *Id.* § 110-6.1(j). Our supreme court amended its rules to govern the process. Specifically, Rule 604(h)(2) provides a defendant must file his notice of appeal in the circuit court within 14 days of the order denying his release. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). "The Notice of Appeal shall *describe* the relief requested and the grounds for the relief requested." (Emphasis added.) *Id.* Within 21 days of the record's filing, the defendant may, but is not required to, file a memorandum in support of the appeal. *Id.* The memorandum's filing begins a 21-day response period for the State (*id.*), with our decision due 14 days after the State's response deadline (Ill. S. Ct. R. 604(h)(5) (eff. Dec. 7, 2023)).

¶ 29     To streamline the process, the supreme court approved a fillable form notice of appeal. Consistent with the Rule 604(h)(2) requirement that both the relief requested and grounds for relief be described in the notice of appeal (Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023)), the form provides three lines next to the heading, "Relief Requested," where the defendant is directed to describe the relief he requests. The form also directs the preparer to identify the grounds for the requested relief. It lists several potential points for review stated generally in the conclusory language of the Code. Next to each potential point is a checkbox. The form instructs the preparer to check all boxes that apply and to "describe in detail" the grounds for the requested relief. Each checkbox is followed by eight blank lines for the preparer to include a detailed description of the grounds for the requested relief.

¶ 30     Since the Act became effective, this court has repeatedly faced appeals in which the defendant has checked boxes on the form notice of appeal without providing a reasoned argument

9

either in the notice of appeal or in a Rule 604(h) memorandum. See *People v. Burke*, 2024 IL App (5th) 231167, ¶ 26 (collecting cases). As we observed in *Inman*, appeals under the new pretrial release provisions of the Code are subject to a "demonstrably different process" than typical appeals or even pre-Act bail-order appeals under Rule 604(c). *Inman*, 2023 IL App (4th) 230864, ¶ 13; see Ill. S. Ct. R. 604(c) (eff. Dec. 7, 2023). However, this process does not "function independently from the larger, longstanding body of law governing appeals." *Inman*, 2023 IL App (4th) 230864, ¶ 10. Thus, the principles underlying Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020)—namely, requiring coherent argument and analysis supported by proper record citations and legal authorities if available—should not be ignored in appeals brought under Rule 604(h), even though Rule 341 technically does not apply. *Inman*, 2023 IL App (4th) 230864, ¶ 12.

¶ 31     All appeals begin with the presumption that the circuit court's order was correct, and the party claiming error carries the burden to establish error and that the error warrants relief. *Molner v. Cartenos*, 415 Ill. 172, 176 (1953). The appealing party cannot meet this burden by offering bare contentions against the order; the party must explain any contentions and present an argument based on matters of record and pertinent authorities. *Littell v. City of Peoria*, 374 Ill. 344, 350-51 (1940); *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010). We have repeatedly admonished litigants that this court is not a depository into which the parties may dump the burden of argument and research. *In re Estate of Kunz*, 7 Ill. App. 3d 760, 763 (1972); *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010); accord *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. Accordingly, we routinely hold that the failure to develop an argument in support of a bare contention forfeits that contention, and we do not consider it further. *E.g.*, *People v. Snow*, 2012 IL App (4th) 110415, ¶ 77; *People v. Meyer*, 402 Ill. App. 3d 1089, 1093 (2010). Sometimes, we dismiss an appeal when the appellant

10

fails to present argument beyond bare contentions. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶¶ 19-20.

¶ 32    We recognize Rule 604(h) appeals are subject to a process "demonstrably different" from typical appeals (*Inman*, 2023 IL App (4th) 230864, ¶ 13) and involve a person's liberty at a time he or she is presumed innocent. We do not believe this is a sufficient reason, however, to nullify the longstanding body of law requiring an appealing party to establish error warranting relief through reasoned argument, supported by references to the record and authority if available. Accordingly, we hold that, in appeals under Rule 604(h), a defendant forfeits bare contentions made in the checked boxes of a notice of appeal if he or she does not develop and present an argument, supported with reference to the record and relevant legal authority if available, either in the notice of appeal or in a memorandum.

¶ 33    The text of Rule 604(h) supports the notion that, although appeals under the Act are subject to a different, expedited process, the defendant must make some sort of reasoned argument, as opposed to a bare contention, to establish he or she is entitled to relief. Admittedly, the rule does not require a defendant to file a memorandum. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). However, the rule requires the defendant, in his notice of appeal, to "describe," not simply state, the grounds for the requested relief. *Id.* The form approved by the supreme court goes even further, directing the preparer to "describe in detail" the grounds for relief and providing eight blank lines for that purpose.

¶ 34    Our holding is consistent with our obligation to remain a neutral arbiter of the matters properly placed before us and not act as an advocate. See *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). As our supreme court has noted, our adversary system functions on the principle of party presentation, meaning we rely on the parties to frame the issues to be decided and advance

11

the facts and arguments entitling them to relief. *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010). And while we have the power to raise and decide unargued and unbriefed issues (Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994)), we must not do so when it would have the effect of transforming this court's role from that of jurist to advocate. *Givens*, 237 Ill. 2d at 324.

¶ 35       Here, defendant's notice of appeal failed to comply with Rule 604(h)(2) in two respects. First, defense counsel did not indicate what relief defendant was requesting.[2] Second, defense counsel merely checked boxes on the form notice of appeal without describing any grounds for relief. By checking the boxes, defendant has not "described" the grounds for relief; he has merely stated them. The checked boxes are nothing more than bare, conclusory contentions that track the Code's language, namely (1) "[t]he State failed to meet its burden of proving by clear and convincing evidence that a defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case," and (2) "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." See 725 ILCS 5/110-6.1(e)(2), (3) (West 2022).

¶ 36       Of course, these defects are not jurisdictional (*People v. Acosta*, 2024 IL App (2d) 230475, ¶ 13 (failure to describe relief requested is a nonjurisdictional defect); *Duckworth*, 2024 IL App (5th) 230911, ¶ 5 (failure to describe the grounds for relief is a nonjurisdictional defect)), and

---

[2]As an aside, we note OSAD has never told this court what relief defendant is seeking. OSAD did not correct this deficiency in its notice in lieu of memorandum. And, in the petition for rehearing, OSAD likewise failed to state what relief defendant was seeking if we were to vacate our order and consider the merits. If liberally construed, however, defendant's notice of appeal can be characterized as requesting reversal of the circuit court's order. The notice of appeal states he is appealing the court's October 30, 2023, order denying him pretrial release, and defendant's bare contentions—that the State failed to meet its burden of proof on the two relevant propositions—could result only in reversal of the court's order (as opposed to remand for a new hearing or some other relief).

defendant was entitled to reserve a description of the grounds until he filed a memorandum. But defendant did not file a memorandum and, thus, never provided the missing description of the grounds for relief, much less a reasoned argument. Accordingly, defendant forfeited his bare contentions that the State failed to meet its burden of proof under section 110-6.1(e)(2) and (3) of the Code. See 725 ILCS 5/110-6.1(e)(2), (3) (West 2022).

¶ 37    We now address defendant's petition for rehearing, which asks us to vacate our dismissal and consider the appeal on the merits. Rule 367 governs petitions for rehearing and reads, in part, as follows:

> "The petition shall state briefly the points claimed to have been overlooked or misapprehended by the court, with proper reference to the particular portion of the record and brief relied upon, and with authorities and argument, concisely stated in support of the points. Reargument of the case shall not be made in the petition." Ill. S. Ct. R. 367(b) (eff. Nov. 1, 2017).

¶ 38    Defendant does not assert that we overlooked or misapprehended an argument or some part of the record when we originally decided the case. And he does not suggest our conclusion—that defendant forfeited his contentions by failing to present argument—was wrong. Indeed, he points to nothing in the text of Rule 604(h)(2) that would permit us to ignore the fundamentals of appellate practice outlined above. Instead, defendant improperly relies on three supervisory orders issued by our supreme court in separate cases and asserts that they establish defendant's appeal should be considered on the merits, notwithstanding the forfeiture. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 221 (2008) (supervisory orders are not precedent); *In re Alfred H.H.*, 233 Ill. 2d 345, 352 n.2 (2009) ("We take this opportunity to remind *** future litigants that citation to supervisory orders is inappropriate ***."); see also *Burke*, 2024

IL App (5th) 231167, ¶¶ 34-41 (rejecting the defendant's similar argument based on supervisory orders).

¶ 39    We acted within our discretion when we dismissed the appeal based on defendant's failure to present any argument to this court. *McCann*, 2015 IL App (1st) 141291, ¶¶ 19-20. Nevertheless, we choose *in this case* to overlook defendant's inappropriate citation of supervisory orders and grant his petition for rehearing to address whether dismissal was the appropriate disposition here. See *Anundson v. City of Chicago*, 97 Ill. App. 2d 212, 221 (1968) (choosing to address certain points in a petition for rehearing even though the petition was improper).

¶ 40    As noted, in proceedings under the Act, defendant is presumed to be entitled to release pending trial. 725 ILCS 5/110-2(a) (West 2022). Our legislature has granted defendants the right to have orders denying their pretrial release reviewed by this court. *Id.* § 110-6.1(j) ("The defendant *shall be entitled* to appeal any order entered under [section 110-6.1] denying his or her pretrial release." (Emphasis added.)). And at the present time, defendant is presumed innocent of the charges, and this appeal concerns his liberty. It would be unfair for defendant to lose his statutory right to a review of the detention order by reason of his counsel's failure to advocate on his behalf. Thus, we find dismissal of his appeal without any review was not the appropriate disposition of this case. Rather, the appropriate course of action was to (1) review the record against defendant's bare contentions and (2) declare a forfeiture and affirm if the evidence supported the court's findings. See *People v. Jordan*, 2024 IL App (2d) 230532-U, ¶ 19.

¶ 41    We have reviewed the record, and the evidence supported the circuit court's findings that (1) defendant's release posed a real and present threat to the safety of any person, persons, or the community and (2) no condition or combination of conditions could mitigate that threat. See 725 ILCS 5/110-6.1(e)(2), (3) (West 2022). This offense was allegedly committed during an illegal

14

gun or drug transaction, at a public park when other persons were lawfully present. See *id.* §§ 110-5(a)(1), (2); 110-6.1(g)(1). Further, the record shows defendant committed another firearms offense before his arrest in this case, demonstrating defendant has access to weapons and is not deterred from carrying them and using them illegally. See *id.* §§ 110-5(a)(3); 110-6.1(g)(2), (7). Because the record supports the circuit court's findings, we affirm the detention order. Any further analysis would amount to advocacy on defendant's behalf, which we will not do. *Givens*, 237 Ill. 2d at 323-24.

¶ 42     In closing, we emphasize that OSAD has all but abdicated its role in these proceedings and its duty to advocate zealously on defendant's behalf. See Ill. R. Prof'l Conduct (2010) R. 1.3 cmt. 1 (eff. Jan. 1, 2010) ("A lawyer should *** take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."); *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 32 ("[C]ounsel have a duty to zealously defend clients in any proceedings under the Code."). OSAD never responded to the State's motion to dismiss (despite saying it would), and it did not make any argument in support of the bare contentions contained in defendant's notice of appeal. Even though we would have rejected such an argument out of hand (Ill. S. Ct. R. 367(b) (eff. Nov. 1, 2017)), OSAD did not even argue the merits of defendant's contentions in the petition for rehearing. In short, OSAD made no effort to sustain defendant's burden to establish error. See *Molner*, 415 Ill. at 176.

¶ 43     We will not speculate as to why OSAD declined to present argument on the merits at any time in this case. That was OSAD and defendant's choice to make. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). And we are cognizant of the burden the new pretrial release provisions have placed on defense attorneys, the State, and the courts, both at the circuit and appellate levels, and the strict

15

time requirements placed on all participants under Rule 604(h). We also acknowledge that we are all learning this new way together. However, for our new system to function as intended, we must all take care to faithfully apply article 110 of the Code. That aim requires earnest and thoughtful participation from both the defendant and the State. Here, OSAD abdicated its role and deprived this court of defendant's meaningful participation. As a result, defendant could not establish error.

¶ 44                                    III. CONCLUSION

¶ 45            For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 46            Affirmed.

*People v. Woods*, 2024 IL App (3d) 230592

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 23-CF-1123; the Hon. Amy Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |