2024 IL App (2d) 240162-U
Nos. 2-24-0162 & 2-24-0170 cons.
Order filed June 6, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 23-CM-1974 |
| | ) | 24-CF-316 |
| JOSLYN A. PITTS, | ) ) | Honorable Theodore S. Potkonjak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: In these consolidated appeals, the circuit court's orders revoking defendant's pretrial release in 23-CM-1974 and denying pretrial release in 24-CF-316 are affirmed where defendant forfeited her bare, conclusory contentions, and our independent review of the record reveals no clear error of law in the circuit court's application of the Pretrial Fairness Act.

¶ 2    Defendant, Joslyn Pitts, appeals the trial court's orders (1) revoking pretrial release in Lake County case No. 23-CM-1974, which was docketed in this court as appeal No. 2-24-0170; and (2) denying her pretrial release in Lake County case No. 24-CF-316, which was docketed as appeal No. 2-24-0162.  Both orders were entered pursuant to article 110 of the Code of Civil Procedure

of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan 1, 2023), commonly known as the Pretrial Fairness Act. We consolidate the appeals for decision only and conclude that defendant has forfeited her contentions on appeal because she failed to develop or present any argument, either in her notices of appeal or in a memorandum. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      On December 9, 2023, defendant was charged in Lake County case No. 23-CM-1974 with attempted possession of a controlled substance, a Class A misdemeanor (720 ILCS 570/402(c) (West 2022)) and possession of drug paraphernalia, a Class A misdemeanor (720 ILCS 600/3.5(a) (West 2022)). The complaint alleged that defendant attempted to possess 0.5 grams of cocaine and that she did possess "two pipes with the intent to ingest, inhale, or otherwise introducing a controlled substance for that use." On January 9, 2024, Defendant failed to appear for her initial court date, and the circuit court issued a bench warrant for her arrest.

¶ 5      On January 26, 2024, defendant appeared in court "due to [the] outstanding warrant." She was granted pretrial release, as neither of the charged offenses were detainable under section 110-6.1 of the Code. The circuit court imposed standard pretrial release conditions, including that defendant: (1) appear in court to answer the charges; (2) submit to the orders and process of the court; and (3) not violate any criminal statute in any jurisdiction. 725 ILCS 5/110-10(a) (West

---

[1]Concerning the deadline for our disposition, we retroactively apply the newly amended Illinois Supreme Court Rule 604(h)(8) (eff. April 15, 2024), which allows a disposition to be filled 100 days from the date the appellant filed his or her notice of appeal, as the amendment to Rule 604(h)(8) is procedural. See *People v. Harris*, 2014 IL App (2d) 240070, ¶ 1 n.1.

2022). The court imposed additional conditions, including that defendant report to pretrial services, complete random drug testing, and refrain from consuming alcohol, cannabis, or illegal substances.

¶ 6     On February 1, 2024, defendant again failed to appear for court, and the trial court entered another bench warrant.

¶ 7     On February 11, 2024, in a separate incident, defendant was arrested and charged in Lake County case No. 24-CF-316 with possession of methamphetamine with intent to deliver, a Class X felony (720 ILCS 646/55 (a)(2)(c) (West 2022)), possession of methamphetamine, a Class 1 felony (*id.* § 60(b)(3)), and possession of a controlled substance, a Class 4 felony (720 ILCS 570/402(c) (West 2022)). The State filed a verified petition to detain defendant based on these charges pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged that (1) defendant was charged with a detainable offense, namely possession of methamphetamine with intent to deliver (see *id.* § 110-6.1(a)(1)); (2) the proof was evident or the presumption great that defendant committed that offense, (3) defendant's pretrial release would pose a real and present threat to the safety of a person, persons or the community, and (4) there was no set of conditions that could mitigate the risk that defendant's pretrial release would pose.

¶ 8     The State also filed a verified petition to revoke pretrial release pursuant section 110-6(a) of the Code (725 ILCS 5/110-6(a) (West 2022)) in case No. 23-CM-1974 based on these new offenses. The State alleged that, subsequent to defendant's pretrial release in case No. 23-CM-1974, she committed possession of methamphetamine with intent to deliver, and that the evidence was clear and convincing that her pretrial detention was necessary because there were no conditions that would reasonably ensure that she would not commit another Class A misdemeanor or felony.

¶ 9    On February 14, 2024, the circuit court held a combined detention/revocation hearing. Defendant appeared in court and was represented by the public defender. The State proffered as follows. At midnight on February 11, 2024, Officer Theis of the Waukegan Police Department was conducting a business check of Rodeway Inn, which is an establishment known for narcotics trafficking and prostitution. He patrolled the parking lot and observed a Chevy Suburban, with no rear license plate, parked in the rear parking lot. The vehicle was occupied by two females. Officer Theis entered the Rodeway Inn to ask an employee a question and, at that time, he noticed that the Suburban had left the parking lot. He returned to his vehicle, pursued the Suburban, and conducted a traffic stop.

¶ 10    Defendant was seated in the passenger seat and appeared nervous. She provided her driver's license to Officer Theis upon request, and her ran her background. Defendant had two active warrants pending and a flag for armed and dangerous. One warrant was from Lake County for failure to appear in case No. 23-CM-1974, and the other warrant was out of Peoria for possession of a stolen motor vehicle.

¶ 11    Officer Theis waited for his backup officer, who incidentally had a K-9, to arrive before returning to the Suburban to take defendant into custody. Officer Theis and his backup informed defendant that she was under arrest on the Lake County warrant, and, at that point, defendant appeared to become more nervous. The officers also observed a black leather Michael Kors bag on defendant's lap.

¶ 12    Defendant was removed from the Suburban, and the driver consented to a search of the vehicle. The K-9 "conducted a sniff" and alerted the officers to the Michael Kors bag that had been on defendant's lap. The officers opened it and found a "significant amount of drug paraphernalia," including six or seven needles and glass pipes which, based on Officer Theis'

training and experience, were typically used to consume methamphetamine or cocaine. They also found a small makeup bag that contained a "white, crystal-like substance" that field tested positive for methamphetamine with a total weight of 17.2 grams. In a separate, small makeup bag, they found a pill bottle that contained two large rocks that weighed 0.6 grams and field tested positive for methamphetamine. In yet another makeup bag they found another pill bottle with two small baggies inside. One baggie weighed 0.2 grams and the substance inside field tested positive for cocaine and the other weighed 1.2 grams and field tested positive for methamphetamine. The officers also located a contact lens case. In the left portion of the case was 0.4 grams of a substance that field tested positive for cocaine, and in the right side was 1.9 grams of a substance that likewise tested positive for cocaine.

¶ 13    Defendant was given *Miranda* warnings, and she stated that she was holding the drugs for "someone else." Officer Theis related that, based on his training and experience, the quantity of methamphetamine defendant possessed was more than would be used for personal use. Officer Theis also stated that the methamphetamine were spread in small quantities among different makeup bags and paired with pieces of paraphernalia to create what appeared to be a "package" to provide to others.

¶ 14    Based on these facts, the State argued that (1) the proof was evident or the presumption great that defendant committed the offense of possession of methamphetamine with intent to deliver, which is a detainable offense; (2) defendant's history of distributing drugs presented a threat to the community because methamphetamine is a "highly addictive drug which is dangerous and [has] dangerous withdrawal symptoms," as well as that those who use such drugs "risk their death by overdose;" and (3) no pretrial release conditions could mitigate that threat due to the ease at which methamphetamine can be manufactured and the fact that defendant's criminal history

demonstrated that she was unwilling to comply with conditions of release.

¶ 15    Defendant proffered as follows.  She was 37 years old and living in Waukegan with her mother, whom she cared for and was supporting financially.  Her mother had been sick for the last two years and recently underwent open heart surgery.  Defendant had two children, ages 14 and 10.  Defendant previously worked in a nursing home, but she began cleaning homes for a living so that she would be more available to care for her mother.  Regarding the February 11, 2024, incident that formed the basis of case No. 24-CF-316, defendant denied that the Michael Kors bag was hers, but rather, it was her friend's bag, who was the other passenger of the Suburban.  Counsel explained that "[t]he friend had this purse in her possession, threw it on [defendant's] lap and said 'do something with this,' " and it was that point that the bag fell onto the floor and police observed it.  "The friend blamed everything on [defendant]."  Defendant likewise disputed that the bag belonged to her because she "had her own possessions in her own backpack[,] not in this purse." She also disputed that the drugs were in "ready-to-deliver packages," because they seemed "scattered [in] a lot of different ways."  Defendant requested "whatever conditions the court might consider, including level 4, or home confinement, which would allow her to keep working and tak[e] care of her mother."

¶ 16    At the close of the parties' arguments, the trial court entered orders granting the State's petition to revoke defendant's pretrial release in case No. 23-CM-1974 and the petition to detain in case No. 24-CF-316.

¶ 17    Defendant timely appealed both orders using the form notice of appeal promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023).  On April 1, 2024, through the Office of the State Appellate Defender, defendant filed notices in lieu of an Illinois Supreme Court Rule 604(h) (eff. Dec 7, 2023) memorandum in both appeals.  On April 25, 2024, the State submitted

memoranda opposing defendant's appeals.

¶ 18                                    II. ANALYSIS

¶ 19    Rule 604(h) provides that an appellant may either stand on his or her notice of appeal or may, but is not required to, file a memorandum.  Ill. Sup. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). Defendant expressly declined to file a memorandum, and she therefore elected to stand on her notices of appeal.  Appeals under Rule 604(h) are governed by a procedure that is "demonstrably different" than typical appeals, but this process does not "function independently from the larger, longstanding body of law governing appeals." *People v. Inman*, 2023 App (4th) 230864, ¶¶ 10, 13.  Indeed, Rule 604(h) still requires that a notice of appeal include both a description of the relief sought and the grounds for that relief. *Id.* ¶ 13.  Indeed, "some form of argument is required, along with justification for claiming entitlement to relief—like references to the record, the evidence presented, or, if possible, legal authority." *Id.*

¶ 20    Defendant purports to raise several contentions on appeal in support of her position that the trial court's orders revoking her pretrial release in case No. 23-CM-1974 and ordering her detention pending trial in case No. 24-CF-316 should be reversed, but she failed to provide any meaningful argument or support her contentions with reference to the record or citation to pertinent legal authority.  For example, in support of her contention that the trial court's order revoking pretrial release should be reversed, under the "grounds for relief" portion of the form notice of appeal, defendant simply checked two boxes that are applicable to revocations of pretrial release under section 110-6(a) of the Code.  Specifically, defendant checked the boxes indicating that "[t]he State failed to meet its burden of proving by clear and convincing evidence that Defendant violated the conditions of her pretrial release;" and "the court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of the Defendant

for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor."

¶ 21    Notwithstanding the directive that a defendant should "describe in detail" the grounds for relief, here, defendant provided no elaboration in support of either of these identified grounds. See *People v. Spahn*, 2024 Ill App (4th) 231301-U, ¶ 11 ("An appellant may not satisfy his burden or persuasion by merely checking a box on a form notice of appeal next to boilerplate language taken directly from the [Pretrial Fairness] Act"). In the absence of any argument provided by defendant, we may not formulate an argument on her behalf, because that would impermissibly transform our role from that of a neutral arbiter into an advocate for one party to the exclusion of the other. *People v. Woods*, 2024 IL App (3d) 230592, ¶ 34. The appellate court is not a depository into which the appellant may dump the burden of argument, and we are entitled to have the issues clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5. This court is also not an advocate for any party. *People v. Jordan*, 2024 IL App (2d) 230532-U, ¶ 14. Because defendant has failed to articulate any argument whatsoever in support of her requested relief, she has forfeited these bare, conclusory contentions. See *Woods*, 2024 IL App (3d) 230592, ¶ 32 ("In appeals under Rule 604(h), a defendant forfeits bare contentions made in the checked boxes of a notice of appeal if he or she does not develop and present an argument, supported with reference to the record and relevant legal authority if available, either in the notice of appeal or in a memorandum").

¶ 22    Defendant's arguments in support of her effort to reverse the circuit court's order denying pretrial release pending the resolution of case No. 24-CF-316 fare no better. In her form notice of appeal, defendant checked boxes challenging whether the State met its burden by clear and convincing evidence that: (1) defendant committed a detainable offense; (2) defendant posed a real

and present threat to the safety of any person or the community; and (3) there is no condition or combination of conditions that could mitigate that threat.  Rather than rely entirely on the checked boxes to describe her grounds for relief, defendant does offer some elaboration on each of these points, unlike in her other notice of appeal.  However, the elaboration consists entirely of non-statements and empty verbosity.  For example, in opposition to the court's finding that the State proved by clear and convincing evidence that the proof is evident or the presumption great that she committed a detainable offense, defendant elaborated:

> "The Court found that the proof was evident and the presumption great that the Defendant committed the offenses charged.  The State has the burden of proving by clear and convincing evidence that 'the proof is evident or the presumption great that the defendant committed' a detainable offense.  [Citation.]  'Clear and convincing evidence' is 'that quantum of proof that leaves no doubt in the mind of the fact finder about the truth of the proposition in question.'  [Citation.] While clear and convincing evidence is not as high as beyond a reasonable doubt, it is higher than preponderance of the evidence.  [Citation.]  The State failed to prove by clear and convincing evidence that the Defendant committed an offense that makes her eligible to be detained prior to conviction, and the Court's finding should be reversed."

Defendant's elaboration on the remaining issues is likewise devoid of substance.  In arguing that the State failed to prove by clear and convincing evidence that she posed a real and present threat to any person or the community, defendant asserts:

> "The Court found that the Defendant was a real and present threat.  The Court erred in finding the State met its burden.  The Defense demonstrated that the Defendant would not be a threat to any person or the community, and the Court's finding should be reversed."

Similarly, in challenging the court's finding regarding the non-availability of conditions that could mitigate the threat defendant's release would pose, defendant elaborated only that:

> "The State argued that no set of conditions would mitigate the real and present threat to the safety of the alleged victim or community. The Defense proffered that the Court could impose conditions that could mitigate any threat. As there are conditions that could have been imposed to mitigate any threat that Defendant may pose, the Court erred in making this determination and the Court's finding should be reversed."

¶ 23 The above contentions do nothing to describe in detail the grounds for relief, and defendant has failed to provide any substantive reasoning or point to anything in the record to demonstrate *why* the court's rulings were in error. Instead, defendant declares that she disagrees with the State, without adding any meaningful content. At its core, defendant's argument on these points is: the State argued "X," defendant argued "not X," and defendant concludes that the circuit court's findings are therefore erroneous. These non-statements clearly do not make for a cohesive argument, and we therefore find defendant's arguments forfeited.

¶ 24 Forfeiture aside, we have examined the record and conclude that the circuit court's orders were supported by sufficient evidence and comply with the statutory authority. See *People v. Palomar*, 2024 IL App (2d) 230476, ¶ 18 (holding that when a defendant merely checks boxes on a notice of appeal form but fails to explain the basis for the claim, the appellate court should nevertheless examine the record to ensure that the proceedings and the circuit court's order adhere to the Pretrial Fairness Act, nothing more).

¶ 25 In entering the orders that are the subject of this appeal, the trial court explained that, in "[l]ooking at the proffer by the State, I find by clear and convincing evidence that she committed the offense as charged," namely the Class X felony offense of possession of methamphetamine

with intent to deliver. It further explained that defendant and the driver of the Suburban were "in the back of a motel parking lot or hotel parking lot. They are not coming from just getting a bite to eat. They are back there. *** [E]verything leads to they are back there making transactions, which again, is inherently dangerous to the community." Considering defendant's dangerousness to the community and whether there was any condition or combination of conditions that would mitigate that threat or prevent defendant from being charged with a subsequent felony or class A misdemeanor, the court astutely noted that defendant was "already on level 3 Pretrial Bond Services and not abiding by what she was supposed to do[,] not only by possessing drugs again, but by failing to come to court twice again, coupled with a warrant out of Peoria County." The court continued that defendant already "had a combination of conditions to ensure that she would come back to court, but she hasn't." The court further reasoned that, "based on defendant's past priors and failures to appear, the fact that she has been on pretrial to no avail because she hasn't complied with the Court-ordered conditions that there are no conditions or combination of conditions that ensures the safety of any individual or any individuals out there that they may sell to or that [defendant] would, in fact, comply with any of those conditions and actually come back to court." Because the record reveals no clear error of law, and in the absence of any meaningful argument to the contrary offered by defendant, "we have no real option but to affirm." *Id.* ¶ 19.

¶ 26                              III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgments of the circuit court of Lake County (1) revoking defendant's pretrial release in case No. 23-CM-1974, and (2) denying defendant's pretrial release in case No. 24-CF-316.

¶ 28    Affirmed.